UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JONI EADES and LEVERE C. PIKE, JR.          Docket No.: 12-cv-6680

                                    Plaintiffs,

        -against-                                **AFFIRMATION OF**
                                                 **KIRA TSIRING**

KENNEDY, PC LAW OFFICES,

                                    Defendant.

---------------------------------------------------------------

**KIRA TSIRING,** an attorney admitted to practice law in the state of New York

and in the United States District Court for the Western District of New York, affirms the

following under penalty of perjury:

1.      I am an associate at Melito & Adolfsen, P.C., attorneys for defendant

Kennedy, PC Law Offices ("defendant") in this matter and as such am fully familiar with

the facts and circumstanced herein based upon files maintained by this office and my

involvement in this matter.

2.      I submit this affirmation and the accompanying Memorandum of Law in

support of defendant's motion pursuant to Rule 12(b)(2), Rule 12(b)(3) and Rule 12(b)(6)

of the Federal Rules of Civil Procedure seeking dismissal of Plaintiffs' Complaint in its

entirety since: (i) the Complaint fails to state a cause of action; (ii) the Court lacks

personal jurisdiction over defendant; and (iii) the Complaint was filed in the improper

forum.

3.      Attached hereto as Exhibit "A" is a true and accurate copy of the

Complaint filed by Plaintiffs in this matter.

4.      Attached hereto as Exhibit "B" is a true and accurate copy of the

Complaint filed by Defendant against Plaintiffs in Pennsylvania, including all exhibits

thereto.

5.      Attached hereto as Exhibit "C" is a true and accurate copy of the Answer

filed by Plaintiff Lever C. Pike Jr. in response to the Complaint filed by Defendant in the

Pennsylvania action, without exhibits.

Wherefore, based on the Memorandum of Law submitted herewith and the

attached exhibits it is respectfully requested that this action be dismissed in its entirety.


Dated: New York, New York
       February 19, 2013

                                         Yours, etc.,
                                         **MELITO & ADOLFSEN P.C.**

                                         By:_____
                                            John H. Somoza, Esq. (JHS 1801)
                                            Kira Tsiring, Esq. (KT 3436)
                                            Melito & Adolfsen P.C.
                                            *Attorneys for Defendant*
                                            *Kennedy P.C. Law Offices*
                                            233 Broadway, Suite 1010
                                            New York, New York 10279
                                            (212) 238-8900

To:     Seth J. Andrews, Esq.
        THE LAW OFFICES OF KENNETH HILLER, PLLC
        6000 North Bailey Ave., Suite 1A
        Amhurst, New York 14226

98710/0344/392

# EXHIBIT A

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of New York

| | |
|---|---|
| JONI EADES and LEVERE C. PIKE, JR. | ) |
| | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. **12  CV   6680** |
| KENNEDY, PC LAW OFFICES | ) |
| | ) |
| _Defendant_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   Kennedy, PC Law Offices
1100 Ashwood Drive, Suite 1104B
Canonsburg, Pennsylvania 15317

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   The Law Offices of Kenneth Hiller, PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, New York, 14226
(716)564-3288

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: ___DEC 1 3 2012___                    _Michael J. Roemer_
                                   _Signature of Clerk or Deputy Clerk_

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JONI EADES AND LEVERE C. PIKE, JR.,

                              Plaintiffs,

     v.

KENNEDY, PC. LAW OFFICES.,

                              Defendant.

---

**12  CV  6680** L

Civil Action No. _____



ORIGINAL
RECEIVED AND FILED
UNITED STATES DISTRICT COURT CLERK
WESTERN DISTRICT OF NEW YORK

DEC 1 3 2012

BY:

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1. This is an action for actual and statutory damages brought in response to Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA") which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

3. Venue is proper in this district under 28 U.S.C. §1391(b) in that the Defendant transacts business here and the conduct complained of occurred here.

### III. PARTIES

4. Plaintiff, Joni Eades, is a natural person residing in the County of Monroe and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5. Plaintiff, Levere C. Pike, Jr., is a natural person residing in the County of Chautauqua and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

6. Defendant, Kennedy, P.C. Law Offices, is a corporation organized and existing under the laws of the State of Pennsylvania and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

7. Defendant regularly attempts to collect debts alleged to be due another.

1

8. The acts of the Defendant alleged hereinafter were performed by its employees acting within the scope of their actual or apparent authority.

9. All references to "Defendant" herein shall mean the Defendant or an employee of the Defendant.

## IV. FACTUAL ALLEGATIONS

10. That Plaintiff Levere C. Pike, Jr.'s wife incurred a debt to HCF of Corry, Inc. d/b/a Corry Manor. This debt will be referred to as "the subject debt."

11. That the subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

12. That upon information and belief Defendant was employed by Corry Manor to collect on the subject debt.

13. That on or about October 2010, Plaintiff Levere C. Pike, Jr.'s wife was admitted to Corry Manor for rehab for a surgical procedure on her hip.

14. In or about December 2010, after Ms. Pike was already admitted to Corry Manor, Plaintiff Levere C. Pike, Jr. was informed by Corry Manor that he had to enter into an admission agreement in order for his wife to remain at the Corry Manor nursing facility.

15. This admission agreement stated that in exchange for nursing care provided to Ms. Pike, Plaintiff Levere C. Pike, Jr. promised to use Ms. Pike's assets to pay for the care provide to her.

16. In or about January 2011, Plaintiff Levere C. Pike, Jr.'s wife passed away during her residence at Corry Manor.

17. At the time of her passing, Corry Manor alleged that there was an outstanding balance of $7,996.76 for Ms. Pike's treatment

18. On or about December 14, 2011, Defendant, on behalf of Corry Manor, filed a lawsuit against Plaintiffs in the State of Pennsylvania, Erie County Court of Common Pleas alleging that they were responsible for the alleged outstanding balance for Ms. Pike's treatment.

19. That Plaintiff Joni Eades does not reside nor ever never resided in Pennsylvania.

20. That Plaintiff Joni Eades never agreed to be responsible for any medical debt of her mother, Ms. Pike.

21. That Plaintiff Joni Eades never entered into any agreement with Defendant's client, Corry Manor.

22. That Plaintiff Levere C. Pike, Jr., at the time of the lawsuit brought by Defendant on behalf of Corry Manor, did not reside in Pennsylvania.

23. That Plaintiff Levere C. Pike, Jr. never agreed to be responsible for any medical debt of his wife, Ms. Pike.

24. That Plaintiff never withheld or misappropriated any of his wife's assets in efforts to not pay the alleged balance stated as due and owing by Corry Manor.

25. That pursuant to the admission agreement entered into by Plaintiff Levere C. Pike, Jr. and Corry Manor, any legal dispute shall be resolved through arbitration.

26. That Defendant improperly filed, on behalf of Corry Manor, a lawsuit against Plaintiffs in the State of Pennsylvania, Erie County Court of Common Pleas alleging that they were responsible for the alleged outstanding balance for Ms. Pike's treatment.

27. That Defendant called Plaintiff Joni Eades and stated to her that if the alleged subject debt was not paid, that they would put a lien on her father's home and garnish her wages. Joni Eades informed them that she was not responsible for her mother's medical bills to which the Defendant replied "services were provided, the bill needs to be paid and you are responsible."

28. That as a result of Defendants acts Plaintiffs became nervous, upset, anxious, and suffered from emotional distress.

## V. CAUSE OF ACTION

29. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above.

30. The conduct of Defendant as described in this complaint violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

    A. Defendant violated 15 U.S.C. §1692e4 by stating to Plaintiff Joni Eades that they would garnish her wages if she did not pay the alleged subject debt.

    B. Defendant violated 15 U.S.C. §1692f and. §1692f1 by stating to Plaintiff Joni Eades that she was responsible for her mother's medical bill.

    C. Defendant violated 15 U.S.C. §1692f6 by stating that they would place a lien on Plaintiff Levere C. Pike, Jr.'s home if the alleged subject debt was not paid.

3

D. Defendant violated 15 U.S.C. §1692e, §1692e2, §1692e5, §1692e10, and 15 U.S.C. §1692f1 by improperly filing on behalf of Corry Manor, a lawsuit against Plaintiffs in the State of Pennsylvania, Erie County Court of Common Pleas alleging that they were responsible for the alleged outstanding balance for Ms. Pike's treatment.

31. That as a result of the Defendant's FDCPA violations as alleged herein, Plaintiff became nervous, upset, anxious and suffered from emotional distress.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against the Defendant for:

(a) Actual damages;

(b) Statutory damages for pursuant to 15 U.S.C. § 1692k.

(c) Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

(d) For such other and further relief as may be just and proper.

## VI. JURY DEMAND

Please take notice that Plaintiff demands trial by jury in this action.

Dated: December 13, 2012

/s/ Seth J. Andrews
Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: sandrews@kennethhiller.com

4

**EXHIBIT B**

# Supreme Court of Pennsylvania

## Court of Common Pleas
### Civil Cover Sheet

_____ Erie _____ County

| For Prothonotary Use Only: |
|---|
| Docket No: |
| 14407-11 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

**Lead Plaintiff's Name:**
HCF of Corry Inc. d/b/a Corry Manor

**Lead Defendant's Name:**
Levere C. Pike, Jr.

Are money damages requested? ☒ Yes  ☐ No

Dollar Amount Requested: (check one)
- ☒ within arbitration limits
- ☐ outside arbitration limits

Is this a *Class Action Suit*? ☐ Yes  ☒ No

Is this an *MDJ Appeal*? ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: Michael T. Siegert, Esquire

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☒ Debt Collection: Other
- ☐ Breach of Contract
- Breach of Statutory Duty of
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

HCF OF CORRY, INC.
d/b/a CORRY MANOR,

                      Plaintiff,

       v.

LEVERE C. PIKE, JR,
JONI EADS, &
MICHELLE PETERSON,

                 Defendants.

IN THE COURT OF COMMON PLEAS
OF ERIE COUNTY, PENNSYLVANIA

No. 14407-11



## COMPLAINT

Filed on behalf of:

Plaintiff, HCF of Corry, Inc. d/b/a Corry
Manor

Counsel of Record for this Party:

Michael T. Siegert, Esquire
Attorney I.D. No. 41525

John N. Kennedy, Esquire
Attorney I.D. No. 68278

KENNEDY, PC
Law Offices
1100 Ashwood Drive, Suite 1104B
Canonsburg, PA 15317
(717) 233-7100
msiegert@kennedypc.net

| | |
|---|---|
| HCF OF CORRY, INC.<br>d/b/a CORRY MANOR,<br><br>              Plaintiff,<br><br>        v.<br><br>LEVERE C. PIKE, JR.,<br>JONI EADS, &<br>MICHELLE PETERSON,<br>              Defendants. | IN THE COURT OF COMMON PLEAS<br>OF ERIE COUNTY, PENNSYLVANIA<br><br>No. |

## COMPLAINT

**AND NOW, COMES** Plaintiff, HCF of Corry, Inc. d/b/a Corry Manor (Corry Manor or Plaintiff), by and through its attorneys, Kennedy, PC Law Offices, and files the within Complaint against Defendants, Levere C. Pike, Jr., Joni Eads, and Michelle Peterson, and in support thereof provides as follows:

1.      Plaintiff is a skilled nursing facility located at 640 Worth Street, Corry, PA 16407-1478.

2.      Defendant Levere C. Pike, Jr. (Mr. Pike), husband of Doris Pike, a former resident of Plaintiff's facility, is an adult individual currently residing at 5500 Button Valley Road, Ashville, NY 14710.

3.      Defendant Joni Eads (Ms. Eads), daughter of Doris Pike, is an adult individual currently residing at 551 Greanleaf Meadow Road, Rochester, NY 14612.

4.      Defendant Michelle Peterson (Ms. Peterson), daughter of Doris Pike is an adult individual currently residing at 5957 Niobe Road, Panama, NY 14767-9774.

5.      On October 18, 2010, Plaintiff and Defendant Ms. Peterson entered into an Admission Agreement (Agreement) pursuant to which Plaintiff agreed to provide Doris Pike

Corry Manor v. Pike, et. al.

with skilled nursing care and services in exchange for Ms. Peterson's promise to use Doris Pike's assets to pay for the services rendered.  (A copy of the Agreement is attached hereto as Exhibit A.)

6.      By signing the Agreement, Ms. Peterson agreed to do the following:

a.      "<u>Duty of Representative on behalf of Resident.</u>  During the term of his/her residency, the Resident may need assistance in arranging for payment for the services provided.  You have asserted to the Manor that the Representative shall act in a fiduciary capacity on the Resident's behalf to satisfy the Resident's financial obligations under the Agreement if the Resident chooses not to, or is unable to, meet those obligations.  The Resident shall be primarily responsible for making payments to the Manor until such time as he/she assigns the responsibility for making payment to the Representative or until he/she can no longer make payments on his/her own behalf; at such time, the Representative shall become primarily responsible for making such payments."  (Ex. A § (II) (A) (2) at 1.)

b.      "<u>Legal Authority to Access Resident's Funds.</u>  You have asserted that the Representative has legal access to the Resident's income, assets or resources, including, but not limited to, social security, pension or retirement funds, annuities, insurance, bank accounts, and mutual funds; and, You understand that the Manor is entering into the Agreement in reliance on that assertion.  You agree that all such resources shall be considered the Resident's resources for purposes of this Agreement.  You agree that if any of these resources transfer by operation of law while the Resident still has outstanding debts to the Manor and such transfer causes the Resident's remaining resources to be insufficient to pay the

2

debt in full, then the Representative shall be personally responsible for the remaining debt to the Manor." (Ex. A § (II) (A) (3) at 1-2.)

c.      "Diversion of Resident's Resources. Representative agrees to be a good financial steward of the Resident's income, resources and assets over which he/she has control. Representative understands and agrees that the misappropriation, theft or redirection of those resources so that the Resident's financial obligations under this Agreement are not met is a violation of the Agreement, and may constitute a crime. **If any payments or funds of the Resident that are available to pay for the Resident's care are withheld, misappropriated for personal use, or otherwise not turned over to the Manor for payment of the Resident's financial obligations under this Agreement, then Representative agrees to pay those amounts to the Manor from the Representative's own resources.** In addition, the Representative agrees to pay from his/her own resources any unpaid charges due to the Manor as a result of the Representative's failure to cooperate in the Medicaid eligibility or redetermination process." (Emphasis added.) (Ex. A § (II) (A) (5) at 2.)

d.      "Responsibility for Payment if Medicare Coverage Denied or Terminated. You understand that Medicare coverage and eligibility is established by Federal guidelines that may change from time-to-time. You agree to apply promptly for any applicable Medicare benefits. The Manor will assist You in applying for Medicare coverage for the Resident; however, You acknowledge that the Federal government and not the Manor make the determination of Medicare coverage. The Manor makes no guarantee, representation, or warranty that Resident will be

covered by Medicare, or if initially covered will continue to be covered.  You are required to pay the Manor at the private-pay rate for all charges incurred by the Resident in the event that a Resident's application for Medicare coverage is denied or if the Resident's eligibility for Medicare coverage expires."  (Ex. A § (II) (B) (3) (d) at 3.)

e.    "Responsibility for Payment if Medicaid Coverage Denied or Terminated. You are responsible for applying for or renewing the Resident's Medicaid coverage.  While the Manor may assist you in applying for Medicaid coverage, the Manor does not guarantee that Medicaid coverage will be available to the Resident.  If the Resident's application for Medicaid coverage is denied or if the Resident becomes ineligible at any time for Medicaid coverage, You shall be required to pay the Manor the private-pay rate for all charges incurred by the Resident."  (Ex. A § (II) (B) (4) (b) at 3.)

f.    "Continued Payment to the Manor During Application Process.  The filing of an application for Medicaid does not excuse You from continuing to make payment to the Manor in accordance with the terms of this Agreement.  While the Resident's application is being reviewed for Medicaid eligibility, You agree to assign or continue to pay the resource amount estimated by and/or billed from the Manor.  **You must make all resource / income payments by the fifth (5th) day of each month for which services are received.**  If payment is made for any period during which the Resident is later determined to be eligible for Medicaid, a prompt refund will be made by the Manor in accordance with applicable law, deducting resident liability or other amounts due privately."  (Ex. A § (II) (B) (5)

(c) at 4.)

g.      "Cooperation in Application Process.  You are obligated to make full and

complete disclosure regarding all financial resources and income during the

Medicaid application process, and to cooperate fully in providing all requested

information.  You agree to act promptly to establish and maintain the Resident's

eligibility for Medicaid, including, but not limited to, taking any and all necessary

action to ensure that the Resident's assets are appropriately reduced to and remain

within allowable limits for Medicaid as established by applicable law."  (Ex. A §

(II) (B) (5) (d) at 4.)

h.      "Payment Due Date; Late Charges; Authorization for Release.

*Private Pay:*  You must pay the Basic Rate no later than the last business day of

the month prior to which services are to be received and any amounts due for

Additional Services within thirty (30) days of the date of invoice.  *Medicaid /*

*Medicaid Pending:*  You must pay all resources/income no later than the fifth (5th)

day of each month that services are received and any amounts due for Additional

Services within thirty (30) days of the date of invoice.  If any charge or fee is not

paid on the date that such payment is due, interest at the rate of one and one-half

percent (1.5%) will be added each month to the unpaid balance of such charge,

effective as of the date the balance is paid in full.  In addition, if the Manor retains

the services of a collection agency or an attorney to obtain the payment of

amounts due hereunder, the Manor shall be entitled to recover from the Resident

all collection agency and attorney's fees, court costs and other collection

expenses.  You authorize the Manor to release information about your residency,

the services provided and any debts owed in attempting to collect amounts due and not paid." (Ex. A § (II) (D) at 5.)

7.     On December 22, 2010, Doris Pike was admitted to Hamot Medical Center and returned to Corry Manor on December 29, 2010.

8.     On December 29, 2010, Plaintiff and Defendant Mr. Pike entered into an Admission Agreement (Agreement) pursuant to which Plaintiff agreed to provide Doris Pike with skilled nursing care and services in exchange for Mr. Pike's promise to use Doris Pike's assets to pay for the services rendered. (A copy of the Agreement is attached hereto as Exhibit B.)

9.     By signing the Agreement, Mr. Pike agreed to the following:

    a.     "Duty of Representative on behalf of Resident.  During the term of his/her residency, the Resident may need assistance in arranging for payment for the services provided.  You have asserted to the Manor that the Representative shall act in a fiduciary capacity on the Resident's behalf to satisfy the Resident's financial obligations under the Agreement if the Resident chooses not to, or is unable to, meet those obligations.  The Resident shall be primarily responsible for making payments to the Manor until such time as he/she assigns the responsibility for making payment to the Representative or until he/she can no longer make payments on his/her own behalf; at such time, the Representative shall become primarily responsible for making such payments." (Ex. A § (II) (A) (2) at 1.)

    b.     "Legal Authority to Access Resident's Funds.  You have asserted that the Representative has legal access to the Resident's income, assets or resources, including, but not limited to, social security, pension or retirement funds,

annuities, insurance, bank accounts, and mutual funds; and, You understand that the Manor is entering into the Agreement in reliance on that assertion. You agree that all such resources shall be considered the Resident's resources for purposes of this Agreement. You agree that if any of these resources transfer by operation of law while the Resident still has outstanding debts to the Manor and such transfer causes the Resident's remaining resources to be insufficient to pay the debt in full, then the Representative shall be personally responsible for the remaining debt to the Manor." (Ex. A § (II) (A) (3) at 1-2.)

c.       "Diversion of Resident's Resources. Representative agrees to be a good financial steward of the Resident's income, resources and assets over which he/she has control. Representative understands and agrees that the misappropriation, theft or redirection of those resources so that the Resident's financial obligations under this Agreement are not met is a violation of the Agreement, and may constitute a crime. **If any payments or funds of the Resident that are available to pay for the Resident's care are withheld, misappropriated for personal use, or otherwise not turned over to the Manor for payment of the Resident's financial obligations under this Agreement, then Representative agrees to pay those amounts to the Manor from the Representative's own resources.** In addition, the Representative agrees to pay from his/her own resources any unpaid charges due to the Manor as a result of the Representative's failure to cooperate in the Medicaid eligibility or redetermination process." (Emphasis added.) (Ex. A § (II) (5) at 2.)

d.       "Responsibility for Payment if Medicare Coverage Denied or Terminated,

Corry Manor v. Pike, et. al.

You understand that Medicare coverage and eligibility is established by Federal guidelines that may change from time-to-time. You agree to apply promptly for any applicable Medicare benefits. The Manor will assist You in applying for Medicare coverage for the Resident; however, You acknowledge that the Federal government and not the Manor make the determination of Medicare coverage. The Manor makes no guarantee, representation, or warranty that Resident will be covered by Medicare, or if initially covered will continue to be covered. You are required to pay the Manor at the private-pay rate for all charges incurred by the Resident in the event that a Resident's application for Medicare coverage is denied or if the Resident's eligibility for Medicare coverage expires." (Ex. A § (II) (B) (3) (d) at 3.)

e.      "Responsibility for Payment if Medicaid Coverage Denied or Terminated. You are responsible for applying for or renewing the Resident's Medicaid coverage. While the Manor may assist you in applying for Medicaid coverage, the Manor does not guarantee that Medicaid coverage will be available to the Resident. If the Resident's application for Medicaid coverage is denied or if the Resident becomes ineligible at any time for Medicaid coverage, You shall be required to pay the Manor the private-pay rate for all charges incurred by the Resident." (Ex. A § (II) (B) (4) (b) at 3.)

f.      "Continued Payment to the Manor During Application Process. The filing of an application for Medicaid does not excuse You from continuing to make payment to the Manor in accordance with the terms of this Agreement. While the Resident's application is being reviewed for Medicaid eligibility, You agree to

8

assign or continue to pay the resource amount estimated by and/or billed from the Manor. **You must make all resource / income payments by the fifth (5ᵗʰ) day of each month for which services are received.** If payment is made for any period during which the Resident is later determined to be eligible for Medicaid, a prompt refund will be made by the Manor in accordance with applicable law, deducting resident liability or other amounts due privately." (Ex. A § (II) (B) (5) (c) at 4.)

g.   "Cooperation in Application Process. You are obligated to make full and complete disclosure regarding all financial resources and income during the Medicaid application process, and to cooperate fully in providing all requested information. You agree to act promptly to establish and maintain the Resident's eligibility for Medicaid, including, but not limited to, taking any and all necessary action to ensure that the Resident's assets are appropriately reduced to and remain within allowable limits for Medicaid as established by applicable law." (Ex. A § (II) (B) (5) (d) at 4.)

h.   "**Payment Due Date; Late Charges; Authorization for Release.**
*Private Pay:* You must pay the Basic Rate no later than the last business day of the month prior to which services are to be received and any amounts due for Additional Services within thirty (30) days of the date of invoice. *Medicaid / Medicaid Pending:* You must pay all resources/income no later than the fifth (5ᵗʰ) day of each month that services are received and any amounts due for Additional Services within thirty (30) days of the date of invoice. If any charge or fee is not paid on the date that such payment is due, interest at the rate of one and one-half

Curry Manor v. Pike, et. al.

percent (1.5%) will be added each month to the unpaid balance of such charge, effective as of the date the balance is paid in full. In addition, if the Manor retains the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, the Manor shall be entitled to recover from the Resident all collection agency and attorney's fees, court costs and other collection expenses. You authorize the Manor to release information about your residency, the services provided and any debts owed in attempting to collect amounts due and not paid." (Ex. A § (II) (D) at 5.)

10.     On October 18, 2010, an application was filed with the Chautauqua County New York Department of Social Services to determine whether Doris Pike was eligible for Medical Assistance benefits.

11.     Doris Pike's application for Medical Assistance was denied for failure to provide verifications.

12.     Levere C. Pike, Jr., did not use Doris Pike's resources to fully pay Corry Manor for the cost of services Corry Manor provided to Doris Pike.

13.     Joni Eads did not use Doris Pike's resources to fully pay Corry Manor for the cost of services Corry Manor provided to Doris Pike.

14.     Michelle Peterson did not use Doris Pike's resources to fully pay Corry Manor for the cost of services Corry Manor provided to Doris Pike.

15.     The total outstanding balance owed to Corry Manor under the Agreement is $7,996.76, plus interest, attorney's fees, court costs, and other collection expenses as set forth in Section II. D. of the Agreement. (A copy of an invoice showing the balance on Doris Pike's account with Corry Manor is attached hereto as Exhibit C).

<u>Count One</u>
Corry Manor v. Levere C. Pike, Jr.
Breach of Contract

16.    The allegations contained in Paragraphs 1 through 15 are hereby incorporated by reference as if fully set forth at length herein.

17.    Mr. Pike signed the Agreement as Doris Pike's Representative.

18.    Pursuant to the Agreement, Mr. Pike was required to turn over Mrs. Pike's resources, if any, to Corry Manor to satisfy her financial obligations.

19.    Mr. Pike did not turn over Doris Pike's resources to Corry Manor in payment of her financial obligations.

20.    Mr. Pike's failure to use Doris Pike's resources to pay Corry Manor is a breach of the Agreement.

21.    As a result of Mr. Pike's breach of the Agreement, Corry Manor has suffered damages in the amount of $7,996.76, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement.

WHEREFORE, Corry Manor requests the Court order Levere C. Pike, Jr. to pay $7,996.76 to Corry Manor, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement and any other relief the Court may deem appropriate.

<u>Count Two</u>
Corry Manor v. Levere C. Pike, Jr.
Breach of Statutory Duty of Support
23  Pa.C.S. § 4603

22.    The allegations contained in Paragraphs 1 through 21 are hereby incorporated by reference as if fully set forth at length herein.

11

Corry Manor v. Pike, et. al.

23.     Mr. Pike is the husband of Doris Pike.

24.     Mr. Pike was obligated to provide financial support for the welfare of Doris Pike if she was indigent and to pay Corry Manor for the services provided to Doris Pike pursuant to Pennsylvania's Statutory Duty of Support statute found at 23 Pa. C.S. § 4603.

25.     Doris Pike may have been indigent at all times pertinent.

26.     Mr. Pike has not paid the outstanding balance owed to Corry Manor for the services rendered to Doris Pike.

27.     Mr. Pike may have sufficient financial ability to support Doris Pike.

28.     The failure of Mr. Pike to pay Corry Manor for the cost of Doris Pike's care is a breach of his statutory duty of support to Doris Pike.

29.     As a result of Mr. Pike's breach of his statutory duty of support, Corry Manor has suffered damages.

WHEREFORE, Corry Manor requests the Court order Levere C. Pike, Jr. to pay $7,996.76 to Corry Manor, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement and any other relief the Court may deem appropriate.

### Count Three
### Corry Manor v. Levere C. Pike, Jr.
### Violation of Uniform Fraudulent Transfers Act
### 12 Pa.C.S. § 5101, et seq.

30.     The allegations contained in Paragraphs 1 through 29 are hereby incorporated by reference as if fully set forth at length herein.

31.     Doris Pike's assets may have been transferred to Mr. Pike for purposes other than the direct benefit of Doris Pike.

32.     As a result, Doris Pike's assets may have been transferred to Mr. Pike without

12

Doris Pike receiving a reasonably equivalent value in exchange.

33.     At the time of the transfers, Mr. Pike reasonably should have believed Doris Pike would incur debts beyond her ability to pay as they became due.

WHEREFORE, Corry Manor requests the Court order Levere C. Pike, Jr. to pay $7,996.76 to Corry Manor, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement and any other relief the Court may deem appropriate.

**Count Four**
**Corry Manor v. Joni Eads**
**Breach of Statutory Duty of Support**
**23   Pa.C.S. § 4603**

34.     The allegations contained in Paragraphs 1 through 33 are hereby incorporated by reference as if fully set forth at length herein.

35.     Ms. Eads is the daughter of Doris Pike.

36.     Ms. Eads was obligated to provide financial support for the welfare of Doris Pike if she was indigent and to pay Corry Manor for the services provided to Doris Pike pursuant to Pennsylvania's Statutory Duty of Support statute found at 23 Pa. C.S. § 4603.

37.     Doris Pike may have been indigent at all times pertinent.

38.     Ms. Eads has not paid the outstanding balance owed to Corry Manor for the services rendered to Doris Pike.

39.     Ms. Eads may have sufficient financial ability to support Doris Pike.

40.     The failure of Ms. Eads to pay Corry Manor for the cost of Doris Pike's care is a breach of her statutory duty of support to Doris Pike.

41.     As a result of Ms. Eads's breach of her statutory duty of support, Corry Manor

13

has suffered damages.

WHEREFORE, Corry Manor requests the Court order Joni Eads to pay $7,996.76 to Corry Manor, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement and any other relief the Court may deem appropriate.

**Count Five**
**Corry Manor v. Joni Eads**
**Violation of Uniform Fraudulent Transfers Act**
**12 Pa.C.S. § 5101, et seq.**

42.     The allegations contained in Paragraphs 1 through 41 are hereby incorporated by reference as if fully set forth at length herein.

43.     Doris Pike's assets may have been transferred to Joni Eads for purposes other than the direct benefit of Doris Pike.

44.     As a result, Doris Pike's assets may have been transferred to Ms. Eads without Doris Pike receiving a reasonably equivalent value in exchange.

45.     At the time of the transfers, Ms. Eads reasonably should have believed Doris Pike would incur debts beyond her ability to pay as they became due.

WHEREFORE, Corry Manor requests the Court order Joni Eads to pay $7,996.76 to Corry Manor, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement and any other relief the Court may deem appropriate.

**Count Six**
**Corry Manor v. Michelle Peterson**
**Breach of Contract**

46.     The allegations contained in Paragraphs 1 through 45 are hereby incorporated by reference as if fully set forth at length herein.

47.     Ms. Peterson signed the Agreement as Doris Pike's Representative.

14

48.     Pursuant to the Agreement, Ms. Peterson was required to turn over Doris Pike's resources, if any, to Corry Manor to satisfy her financial obligations.

49.     Ms. Peterson did not turn over Doris Pike's resources to Corry Manor in payment of her financial obligations.

50.     Ms. Peterson's failure to use Doris Pike's resources to pay Corry Manor is a breach of the Agreement.

51.     As a result of Ms. Peterson's breach of the Agreement, Corry Manor has suffered damages in the amount of $7,996.76, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement.

WHEREFORE, Corry Manor requests the Court order Michelle Peterson to pay $7,996.76 to Corry Manor, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement and any other relief the Court may deem appropriate.

### Count Seven
### Corry Manor v. Michelle Peterson
### Violation of Uniform Fraudulent Transfers Act
### 12 Pa.C.S. § 5101, et seq.

52.     The allegations contained in Paragraphs 1 through 51 are hereby incorporated by reference as if fully set forth at length herein.

53.     Doris Pike's assets may have been transferred to Michelle Peterson for purposes other than the direct benefit of Doris Pike.

54.     As a result, Doris Pike's assets may have been transferred to Ms. Peterson without Doris Pike receiving a reasonably equivalent value in exchange.

55.     At the time of the transfers, Ms. Peterson reasonably should have believed Doris Pike would incur debts beyond her ability to pay as they became due.

15

Corry Manor v. Pike, et. al.

WHEREFORE, Corry Manor requests the Court order Michelle Peterson to pay $7,996.76 to Corry Manor, plus interest, attorney's fees, court costs and other collection expenses as set forth in Section (II) (D) of the Agreement and any other relief the Court may deem appropriate.

Respectfully Submitted,

Date: _December 13, 2011_

By: _Michael T. Siegert_
Michael T. Siegert, Esquire
Attorney I.D. No. 41525

John N. Kennedy, Esquire
Attorney I.D. No. 68278

KENNEDY, PC
Law Offices
1100 Ashwood Drive, Suite 1104B
Canonsburg, PA 15317
(717) 233-7100

Attorneys for Corry Manor

Corry Manor v. Pike, et. al.

## VERIFICATION

The undersigned hereby verifies the statements of fact in the foregoing document are true and correct to the best of his or her knowledge, information, and belief.  He or she understands any false statements therein are subject to the penalties contained in 18 Pa. C. S. § 4904, relating to unsworn falsification to authorities.


Dated: _12/07/11_                        _Carol Hartman_

                                         Carol Hartman
                                         HCF Management, Inc.

# EXHIBIT A

# CORRY MANOR

## Care Community Residency Agreement

This Agreement is made and entered into this day of _October 18th_, 20_10_, by and between HCF of Corry, Inc. dba Corry Manor ("the Manor"), _Doris M. Pike_ ("Resident"), and _Michelle Peterson_ ("Representative"). Hereinafter, when capitalized, the term "You" shall refer jointly and severally to the Resident and the Representative.

In consideration of the mutual promises contained in this Agreement, Resident, Representative, and the Manor hereby agree as follows:

## I.  SERVICES

**A. Basic Services.** The Manor will provide room, board, laundry, housekeeping, social, activities and general nursing services (collectively, the "Basic Services") to the Resident. Basic Services do not include special duty nursing care, special equipment, therapy, transportation, medications, guest meals, laboratory and x-ray services, medical supplies, personal comfort items, beauty /barber shop services, and miscellaneous personal services.

**B. Additional Services.** In addition to the Basic Services, the Manor will provide additional non-routine services and supplies ("Additional Services") in accordance with the orders of the Resident's attending physician and/or upon the Resident's request or consent. The Resident will be invoiced for additional services at the Manor's standard fee schedule.

**C. Services of Other Providers.** The Resident may receive services from outside providers in the Manor so long as the outside provider is properly licensed and certified under the law, complies with all applicable government rules and the Manor policies, and enters into an agreement to provide services with the Manor, if applicable.

## II.  CHARGES AND FEES

**A. Responsibility for Payment.**

You shall pay all charges and fees for services that are billed to You by the Manor.

1. <u>No Personal Liability of Representative.</u> All financial obligations in this Agreement are the Resident's, and, except as specifically provided otherwise in the Agreement or as agreed to by Representative, nothing in this Agreement shall be construed to require that a Representative is in any way personally liable to pay for services rendered by the Manor to the Resident.

2. <u>Duty of Representative on Behalf of Resident.</u> During the term of his/her residency, the Resident may need assistance in arranging for payment for the services provided. You have asserted to the Manor that the Representative shall act in a fiduciary capacity on the Resident's behalf to satisfy the Resident's financial obligations under this Agreement if the Resident chooses not to, or is unable to, meet those obligations. The Resident shall be primarily responsible for making payments to the Manor until such time as he/she assigns the responsibility for making payment to the Representative or until he/she can no longer make payments on his/her own behalf; at such time, the Representative shall become primarily responsible for making such payments.

3. <u>Legal Authority to Access Resident's Funds.</u> You have asserted that the Representative has legal access to the Resident's income, assets or resources, including, but not limited to, social security, pension or retirement funds, annuities, insurance, bank accounts, and mutual funds; and, You understand that the Manor is entering into this Agreement in reliance on that assertion. You agree that all such resources shall be considered the Resident's resources for purposes of this Agreement. You agree that if any of these resources transfer by operation of law while

the Resident still has outstanding debts to the Manor and such transfer causes the Resident's remaining resources to be insufficient to pay the debt in full, then the Representative shall be personally responsible for the remaining debt to the Manor.

4. Limitation on Legal Authority to Act on Behalf of Resident. You hereby certify that no one else has financial access or control over the Resident's income, resources and assets, and that You will not grant any other person or entity access or control over said income, resources or assets (with the exception of the Manor) during the term of this Agreement, unless such other person or entity first becomes a party to this Agreement.

5. Diversion of Resident's Resources. Representative agrees to be a good financial steward of the Resident's income, resources and assets over which he/she has control. Representative understands and agrees that the misappropriation, theft or redirection of those resources so that the Resident's financial obligations under this Agreement are not met is a violation of this Agreement, and may constitute a crime. If any payments or funds of the Resident that are available to pay for the Resident's care are withheld, misappropriated for personal use, or otherwise not turned over to the Manor for payment of the Resident's financial obligations under this Agreement, then Representative agrees to pay those amounts to the Manor from the Representative's own resources. In addition, the Representative agrees to pay from his/her own resources any unpaid charges due to the Manor as a result of the Representative's failure to cooperate in the Medicaid eligibility or redetermination process.

6. Billing to Health Insurance Plans. The Manor will bill the Resident's health insurance plan as a service to You. You shall pay the Manor as a Private Pay Resident if the plan does not agree to pay the Manor directly. You also must pay the Manor promptly if your insurance plan does not pay the Manor within forty-five (45) days of billing.

B. Payment Source.

Form A-0187 HCF

The Resident will be admitted to the Manor with a primary pay status of

_____Medicare_____

If the Resident is admitted Medicare primary, the payer source for co-payments is _____Private Pay_____

1. Private Pay Residents. You shall pay in full and in advance each month, a sum equal to one month of Basic Rate charges as set forth in the Rate Schedule. **You must pay the advanced payment by the last business day of the month prior to which services are to be received.** In addition, You shall pay in full all charges for Additional Services incurred in the preceding month for which no advance payment was received by the Manor, as well as any applicable co-payments for therapy and other services incurred during the preceding month that are billed under Part B of the Medicare program, upon receipt of an invoice from the Manor. If the Resident is covered by a health insurance plan, health maintenance organization or other third party payer (other than Medicare or Medicaid), You shall pay all costs not covered by such third party payer, including, without limitation, applicable co-insurance and deductible amounts, and other amounts not timely paid by the third party payer, except and to the extent prohibited by law.

2. Insurance / Managed Care Residents. You are responsible to pay for all services and supplies that the Resident receives. If You arrange to have certain of those services and supplies covered by a health insurance plan, health maintenance organization or other third party payer (other than Medicare or Medicaid), You shall pay all costs not covered by such third party payer, including, without limitation, applicable co-insurance and deductible amounts, and other amounts not paid timely by the third party payer in accordance with this Agreement, except and to the extent prohibited by law.

3. Medicare Residents.

a. Eligibility for Medicare Part A coverage. If certain conditions are met, Medicare Part A pays fully for the first 20 days of care in a skilled nursing facility. For the 21st through the

©2009 HCF May be reproduced with attribution
9/09

100th day, the Resident must share, or co-pay, for the cost of care by paying a daily coinsurance rate, which changes yearly. Note that while there is a Medicare-eligibility period of 100 days, the Resident is not guaranteed the use of all 100 days.

b. <u>Medicare Part B Coverage</u>. Medicare Part B may help pay for covered services the Resident receives in the Manor, if the Resident chooses to participate in the Part B medical insurance program. For example, if the Resident uses up his/her Part A coverage for a spell of illness, Part B also covers a portion of services received in the Manor, such as physical and occupational therapy. Under the Part B program, the Resident must pay an annual premium and a deductible for all Part B services after which Medicare pays 80 percent of the reasonable charges for covered services.

c. **<u>Resident's Share of Costs</u>. A Resident who is a Medicare beneficiary is responsible for payment of all services and supplies provided to the Resident by the Manor. The Manor will bill Medicare on the Resident's behalf for all Medicare-covered services and supplies provided to the Resident, if allowed. The services and supplies covered by the Medicare program are listed on the Rate Schedule. You shall pay the Manor all required Medicare co-insurance and deductible amounts (including, without limitation, twenty percent (20%) of all amounts billed for therapy services and all other services covered under Part B of the Medicare program) together with fees for all non-covered items and services provided by the Manor.**

d. <u>Responsibility for Payment if Medicare Coverage Denied or Terminated</u>. You understand that Medicare coverage and eligibility is established by Federal guidelines that may change from time-to-time. You agree to apply promptly for any applicable Medicare benefits. The Manor will assist You in applying for Medicare coverage for the Resident; however, You acknowledge that the Federal government and not the Manor make the determination of Medicare

coverage. The Manor makes no guarantee, representation, or warranty that Resident will be covered by Medicare, or if initially covered will continue to be covered. You are required to pay the Manor at the private-pay rate for all charges incurred by the Resident in the event that a Resident's application for Medicare coverage is denied or if the Resident's eligibility for Medicare coverage expires.

4. <u>Medicaid Residents</u>.

a. **<u>Resident's Share of Costs</u>. A Resident who is a Medicaid beneficiary is responsible for payment of all services and supplies provided to the Resident by the Manor. The Manor will bill Medicaid on the Resident's behalf for all Medicaid covered services provided to the Resident by the Manor. The services and supplies covered by the Medicaid program are listed on the Rate Schedule. You understand that Medicaid does not pay the full amount of the charges for services and supplies provided by the Manor. The Medicaid agency will determine an amount that the Resident must pay to the Manor. You shall pay the Manor any amount that Medicaid does not pay for the services and supplies provided to the Resident, as required by applicable State regulations. You shall also pay the charges for all non-covered items and services provided by the Manor upon receipt of an invoice.**

b. <u>Responsibility for Payment if Medicaid Coverage Denied or Terminated</u>. You are responsible for applying for or renewing the Resident's Medicaid coverage. While the Manor may assist You in applying for Medicaid coverage, the Manor does not guarantee that Medicaid coverage will be available to the Resident. If the Resident's application for Medicaid coverage is denied or if the Resident becomes ineligible at any time for Medicaid coverage, You shall be required to pay the Manor the private-pay rate for all charges incurred by the Resident.

5. <u>Medicaid Applications</u>.

a. <u>Notification for Advance Planning</u>. You agree to inform the Manor when the Resident's assets reach $15,000. In addition, if the

©2009 HCF May be reproduced with attribution
9/09

Resident does not have monthly income sufficient to pay for the cost of care and services (e.g., the Basic Rate and for Additional Services), You agree to apply for Medicaid or to promptly make arrangements to pay for the Resident's continued stay at the Manor when the Resident's assets reach $5,000.

b. Improper Transfers. When applying for Medicaid, the government may examine all transfers of property and resources that the Resident has made (or that were made on his/her behalf) and all trusts created for the past five (5) years, to determine if any improper transfers were made. The government presumes that any transfer of property or resources five (5) years prior to a Medicaid application is improper if the transfer made the Resident Medicaid-eligible, divested the Resident of proceeds that would be available if the property were sold, or if the Resident transfers income producing property or resources. Examples of improper transfers could include: the transfer of the Resident's house, car and other personal property, the transfer of the Resident's bank accounts, stocks or bonds, the transfer of real estate, and the creation of certain trusts. If an improper transfer of the Resident's resources was made, then the Resident will not be eligible to receive Medicaid assistance for a designated period of time from the date the application for assistance is made.

In the event that the Resident's eligibility for Medicaid benefits is denied, interrupted or terminated for any reason, including due to the government's determination that improper transfers of resources were made, then You agree to make alternative arrangements to ensure that the Manor's charges are paid. If You fail to pay the Manor's charges in full in this circumstance, this Agreement may be terminated and the Resident discharged.

**Are You aware of any transfers of the Resident's property or resources, or any trusts that have been created, in the past five (5) years?** *Please initial below.*

Yes _____     No  MP
    Initial            Initial

c. Continued Payment to the Manor During Application Process. The filing of an application for Medicaid does not excuse You from continuing to make payment to the Manor in accordance with the terms of this Agreement. While the Resident's application is being reviewed for Medicaid eligibility, You agree to assign or continue to pay the resource amount estimated by and/or billed from the Manor. **You must make all resource / income payments by the fifth (5th) day of each month for which services are received.** If payment is made for any period during which the Resident is later determined to be eligible for Medicaid, a prompt refund will be made by the Manor in accordance with applicable law, deducting resident liability or other amounts due privately.

d. Cooperation in Application Process. You are obligated to make full and complete disclosure regarding all financial resources and income during the Medicaid application process, and to cooperate fully in providing all requested information. You agree to act promptly to establish and maintain the Resident's eligibility for Medicaid, including, but not limited to, taking any and all necessary action to ensure that the Resident's assets are appropriately reduced to and remain within allowable limits for Medicaid as established by applicable law.

e. Requirements if Approved for Coverage. **You understand that if the Resident is approved for Medicaid, then the law requires that all of the Resident's income, assets, and resources (other than a small amount set aside for personal needs), including but not limited to, his or her Social Security payment, pension or retirement fund, annuities or insurance, or revenues from the sale of a house, must be used to pay for the Resident's care at the Manor. The Resident's income may not be used to pay rent, utilities, previous debts or any other financial obligations outside of the facility. Some of the Resident's resources may be exempted by the government if he/she has a spouse who still lives at home.**

f. Designation of Authorized Representative. You agree to inform the Manor of the status

©2009 HCF May be reproduced with attribution
9/09

Case 6:12-cv-06680-DGL   Document 6-1   Filed 02/19/13   Page 34 of 59

and progress of the Medicaid application process and, upon the request of the Manor, to provide the Manor with copies of any information and documentation supplied in connection with the application. In addition, You hereby designate the Manor as an "Authorized Representative" of the Resident. As an Authorized Representative, the Manor shall have whatever powers are granted to it under the law and the operating procedures of the applicable State agency, including, but not limited to, the power to commence, complete and submit applications for Medicaid to the appropriate State agency; to appeal the denial of any application; to obtain information at any time about any application, reapplication or appeal from any person or entity having such information, including the State's Medicaid agency; and to submit a hardship waiver request to the State agency when appropriate. The granting of this power does not relieve You of your duty to represent yourself in the Medicaid application and appeal process, or to assist the Manor in providing all information necessary for the Medicaid application process. Whether and how the Manor chooses to exercise this power shall be entirely in its sole discretion.

g.  No Guarantee, Representation or Warranty of Coverage. You understand that merely applying for financial assistance from Medicaid does not mean that the Resident will receive such assistance. The Manor makes no guarantee, representation or warranty that Resident will be eligible for Medicaid coverage, nor that the Resident will maintain such eligibility if covered at any point. You understand that the government, and not the Manor, makes the determination of eligibility for Medicaid coverage.

h.  Future ineligibility. If the Resident receives any income, assets or resources in the future that result in the Resident's ineligibility for Medicaid, You agree that such income, resources or assets will be used to pay for the private-pay cost of care and services rendered to the Resident until the Resident is determined to be eligible for Medicaid again in accordance with applicable law.

C.  **Assignment of Benefits.** You hereby direct all payments made on Resident's behalf by

third party payers, including payments from Medicare and Medicaid, to be made directly to the Manor for any services furnished by the Manor. If Resident is or will be a Medicaid recipient, then in addition You hereby direct all resource payments made to the Resident or on Resident's behalf, including payments from the Social Security Administration and pension benefits, to be made directly to the Manor. You agree to take any steps necessary to implement this assignment of benefits, such as redirecting the direct deposit of Social Security Administration funds or filling out an application to make the Manor the Resident's Representative Payee.

D.  **Payment Due Date; Late Charges; Authorization for Release.** *Private Pay:* You must pay the Basic Rate no later than the last business day of the month prior to which services are to be received and any amounts due for Additional Services within thirty (30) days of the date of invoice. *Medicaid / Medicaid Pending:* You must pay all resources/income no later than the fifth (5th) day of each month that services are received and any amounts due for Additional Services within thirty (30) days of the date of invoice. If any charge or fee is not paid on the date that such payment is due, interest at the rate of one and one-half percent (1.5%) will be added each month to the unpaid balance of such charge, effective as of the date the balance was originally due until the date the balance is paid in full. In addition, if the Manor retains the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, the Manor shall be entitled to recover from the Resident all collection agency and attorney's fees, court costs and other collection expenses. You authorize the Manor to release information about your residency, the services provided and any debts owed in attempting to collect amounts due and not paid.

E.  **Rate Changes.** The Basic Rate may be adjusted by the Manor at any time upon thirty (30) days advance written notice to the Resident. Current charges for Additional Services are available to You upon request. In addition, if the Resident's payment source changes at any time during the Resident's stay

Form A-0187 HCF

- 5 of 10 -

©2009 HCF May be reproduced with attribution
9/09

at the Manor, the Manor's fees and charges to be paid by You may be adjusted immediately.

F. **Refunds.** Within sixty (60) days from the date the Manor determines that an overpayment has occurred, the Manor shall refund such overpaid amounts. Overpayments include, but not limited to, third party payments received for services already paid for by You, private pay advance payments for days following the discharge or death of the Resident.

G. **Obligation to Keep the Manor Informed.** You will inform the Manor as soon as possible if: (1) the Resident's assets reach a value of $15,000 or less due to a transfer of any property, money or stock to another person or entity or similar transaction; (2) a decision has been made to have the Resident switch or join insurance companies or managed care programs; or (3) if the Resident is currently having services paid for by Medicaid, the Resident inherits any property or money, or receives property or money as a gift. You agree to provide the Manor with an accurate financial statement of the Resident's income and resources in a format requested or approved by the Manor upon request by the Manor.

H. **Disputed Debts.** You are responsible for payment in full of all amounts due and owing to the Manor. If you disagree with a charge, you must notify the Administrator in writing of any dispute, and provide reasons and evidence of why you believe the charge is incorrect, within thirty (30) days after receipt of the first invoice that includes the disputed charge. If you do not submit such a written notification, then all charges shall be deemed accurate and any dispute will be deemed waived. All communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent directly to the Administrator of the Manor in writing.

I. **No Legal or Equitable Interest.** You have no legal or equitable interest in the real or personal property of the Manor. The privileges under this Agreement are personal to the Resident and may not be assigned.

sold or transferred by the Resident.

## III. TERMINATION

A. **Term.** This Agreement shall continue until it is terminated as specified in sections III.B. or III.C. of this Agreement.

B. **Termination by Resident.** You may terminate this Agreement at any time; however, the Manor requests that You provide it with at least three (3) days advance notice so that it can conduct proper discharge planning. The Manor has established twelve (12) noon as the discharge time. In order to avoid a charge for the day of discharge, the Resident must discharge before twelve (12) noon This Agreement shall automatically terminate upon the death of the Resident.

C. **Termination by the Manor.** This Agreement may be terminated by the Manor upon any of the following events, subject to State and Federal transfer and discharge provisions: (1) the Resident's failure to make payment or have payment made on his/her behalf in accordance with Article II of this Agreement; (2) discharge from the Manor; (3) the Resident's continued stay jeopardizes the health, safety or welfare of this Resident or other residents of the Manor; and (4) the Manor's license or certification has been revoked, renewal denied, or the Manor is voluntarily closed.

D. **Financial Obligations upon Termination.** You agree that all accrued charges and fees must be paid prior to the effective date of termination or, if later, on the date You receive a final bill. Your duty to pay for all items and services billed by the Manor shall survive the termination of the Agreement.

E. **Effect of Termination and Holdover.** After the Agreement is terminated, You agree that You will ensure that the Resident moves out of the Manor. This includes moving out of the Manor by the date specified in the discharge notice in the event of an involuntary discharge. If the Resident does not move out of the Manor by the termination date, then You agree that the Resident shall pay the Manor a per diem rate equal to two times the Manor's then-current private pay rate for all days that the Resident remains in the Manor after

©2009 HCF May be reproduced with attribution
9/09

termination of the Agreement. You agree to pay all of the Manor's expenses, including attorney's fees and court costs, for any legal action commenced by the Manor to enforce its rights to discharge or otherwise remove the Resident from the Manor.

## IV.  MISCELLANEOUS

A. **Notifications; Exercising Rights for Resident.** By signing this Agreement, the Representative is certifying that he/she: (1) has an interest or responsibility in the Resident's welfare; and (2) has been identified to the Manor as the person responsible for exercising the rights of the Resident if and when he/she is mentally and/or physically incapable of exercising such rights on his or her own behalf. You have identified the Representative as the person to be notified whenever such notifications are necessary as required by law or in the judgment of the Manor.

B. **Nondiscrimination.** The Manor offers its services to persons whose needs can be met by the Manor, without regard to race, creed, sex, age, religion, national origin, handicap, or disability.

C. **Waiver.** The failure of the Manor in any one or more instances, to insist upon strict compliance by You with, or its waiver of any breach of, any of the terms or provisions of this Agreement, shall not be construed to be a waiver by the Manor of its rights to insist upon strict compliance by You with all of the terms and provisions of this Agreement.

D. **Partial Illegality.** If any portion of this Agreement is determined to be illegal or not in conformity with applicable laws and regulations, such part shall be deemed to be modified so as to be in accordance with such laws and regulations, and the validity of the balance of this Agreement shall not be affected. This Agreement shall be construed in accordance with the laws of the State of Pennsylvania, and the county in which the Manor is located shall be the sole and exclusive venue for any legal dispute between the parties.

E. **Complete Agreement; Amendments.** The Manor is not liable for, nor bound by any

manner by, any statements, representations or promises made by any person representing or purporting to represent the Manor, unless such statements, representations or promises are set forth in writing and made a part of this Agreement. Modification of this Agreement may be made only by agreement of both/all the parties in writing; provided, however, the Manor reserves the right to amend the Agreement at any time in order to conform to changes in Federal, State, or local laws or regulations that require modifying the Agreement. The Manor will notify You of its intent to make any such modification at least thirty (30) days prior to making the modification.

F. **Assignment.** No assignment of this Agreement or the rights and obligations hereunder shall be valid without the specific written consent of both parties hereto, provided, however, that this Agreement may be assigned by the Manor or the Organization to any successor entity operating it, and such assignment shall forever release the Manor hereunder.

G. **Representation of Accuracy.** You represent that the information contained on the application forms, financial statements, this Agreement, and Resident's health history are true to the best of your knowledge and belief. You understand that the Manor has relied upon such information and agree that if any of the facts were misrepresented or any important information was left out, then such action may result in a discharge of the Resident.

H. **Incorporation of Other Documents.** The following documents are hereby incorporated into this Agreement by reference: all attached rate schedules and all of the Manor's policies governing the Resident's responsibilities, as may be amended from time-to-time by the Manor in its sole discretion; all application forms, financial statements, and medical records provided to the Manor as part of the Resident's application for admission to the Manor; the Resident Handbook; the Rate Schedule; and all documents that You signed or received during the admission process to the Manor.

*Form A-0187 HCF*

©2009 HCF May be reproduced with attribution
9/09

I. **Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

## V. AGREEMENT TO RESOLVE LEGAL DISPUTES THROUGH ARBITRATION

The parties wish to work together to resolve any disputes in a timely fashion and in a manner that they believe will minimize both of their legal costs. Therefore, in consideration of the mutual promises contained in this Agreement, You and the Manor hereby agree to submit disputes that represent a recognized cause of action in a court of law to binding arbitration, as follows:

A. **Disputes to Be Arbitrated.** Any legal controversy, dispute, disagreement or claim of any kind now existing or occurring in the future between the parties arising out of or in any way relating to this Agreement or the Resident's stay at the Manor shall be settled by binding arbitration, including, but not limited to, all claims based on breach of contract, negligence, medical malpractice, tort, breach of statutory duty, resident's rights, and any departures from accepted standards of care. This includes claims against the Manor, its employees, agents, officers, directors, any parent, subsidiary or affiliate of the Manor.

B. **Binding Nature of Arbitration.** The decision rendered by the arbitrator shall be final and binding, and judgment on the award, if any, shall be entered in accordance with applicable law in any court having jurisdiction thereof. There shall be no appeal of the arbitrator's decision by either party. The decision of the arbitrator shall be binding on all of the parties to the arbitration, and also on their successors and assigns, including the agents and employees of the Manor, and all persons whose claim is derived through or on behalf of Resident, including, but not limited to, that of any parent, spouse, child, guardian, executor, administrator, legal representative, or heir of Resident.

C. **Who Will Conduct Arbitration.** The arbitration shall be conducted by the National Arbitration and Mediation ("NAM"). Information regarding NAM and a copy of

pertinent rules and forms may be located at NAM's website, www.namadr.com; by contacting NAM toll-free at 800-358-2550, by fax at 516-794-8518; or at 990 Stewart Avenue, Garden City, NY 11530. If the NAM process is no longer in existence at the time of the dispute, or NAM is unwilling or unable to conduct the arbitration, then the parties shall mutually agree on an alternative organization to conduct the arbitration.

D. **Costs of Arbitration.** The parties agree that all filing fees shall be shared equally by Resident and the Manor. Thereafter, each party agrees to be responsible for their own fees, expenses and costs as attributed to them pursuant to the NAM rules and procedures, unless ordered otherwise by the arbitrator. Each party agrees to be responsible for their own attorney fees and costs, if any.

E. **How to Request Arbitration.** Any party desiring arbitration shall file a claim with NAM. All necessary forms, rules and procedures are available through NAM, and claims may be submitted online.

F. **Rules of Arbitration.** Regardless of who conducts the arbitration, it shall be conducted in accordance with the NAM rules and procedures, which is hereby incorporated in this Agreement by reference. Except as set forth in the NAM rules and procedures, the arbitration proceedings shall follow all rules of civil procedure and evidence. Statutes of limitation and award caps that would be applicable to a comparable civil action brought in an appropriate court in the county in which the Manor is located shall apply to the arbitration and any award. All claims based in whole or in part on the same incident, transaction, or related course of care and services provided by the Manor to Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose prior to the date upon which notice of arbitration is received by the Manor or the Resident, and is not presented in the arbitration proceeding.

G. **Laws Governing Arbitration.** This agreement to arbitrate disputes and the arbitration proceeding shall be governed in accordance with the Federal Arbitration Act. If for any

©2009 HCF May be reproduced with attribution
9/09

reason there is a finding that the Federal Arbitration Act cannot be applied to this Agreement, then the parties hereby make clear their intent that their disputes/claims be resolved pursuant to Title 37, Subpart H of the Pennsylvania Code, and that the parties do not want their disputes/claims resolved in a judicial forum.

H. **Confidentiality.** You and the Manor agree to keep all arbitration proceedings strictly confidential, and hereby direct any organization overseeing the arbitration process, and any arbitrator to do the same. The fact that a dispute was settled or a judgment issued, and the details of the foregoing, may not be released without an express written authorization from both the Resident and the Manor, unless otherwise required by law.

I. **Canceling the Arbitration Provision.** You, or the Resident's spouse or the personal representative of the Resident's estate in the event of the Resident's death or incapacity, has the right to cancel this Section V of the Agreement by notifying the Manor in writing. Such notice must be sent via certified mail to the attention of the Administrator of the Manor, and the notice must be post marked within thirty (30) days of the date upon which

this Agreement was signed. Instead of mailing, the notice may be hand-delivered to the Administrator within the same thirty (30) time period. The filing of a claim in a court of law within the thirty (30) days provided for above will cancel this Section V of the Agreement without any further action by the Resident.

J. **Resident Understanding & Acknowledgment Regarding Arbitration.** By signing this Agreement, You acknowledge that You have been informed that: (1) This arbitration provision shall not limit in any way Your right to file formal or informal grievances with the Manor or the State or Federal government; (2) Signing this Agreement is not a condition of admission, and that care and treatment will be provided whether or not You sign this Agreement (if the Resident does not wish to sign the Agreement with this provision in it, please ask to have it removed); (3) The decision whether to sign the Agreement is solely a matter for Your determination without any influence; (4) THE AGREEMENT WAIVES YOUR RIGHT TO A TRIAL IN COURT AND A TRIAL BY A JURY FOR ANY LEGAL CLAIMS YOU MAY HAVE AGAINST THE MANOR; and (5) You have the right to seek legal counsel regarding this Agreement.

THE RESIDENT GIVES PERMISSION TO THE REPRESENTATIVE TO SIGN ANY AND ALL DOCUMENTS THAT ARE PART OF THE ADMISSION PROCESS TO THE MANOR ON THE RESIDENT'S BEHALF AS HIS OR HER AGENT. THE RESIDENT AGREES THAT IN SIGNING ON HIS OR HER BEHALF, THE REPRESENTATIVE BINDS THE RESIDENT TO ALL DUTIES IMPOSED BY SUCH DOCUMENTS AS IF THE RESIDENT HAD SIGNED THEM HIMSELF OR HERSELF, INCLUDING THE DUTY TO PAY THE MANOR FOR SERVICES RENDERED.

THE REPRESENTATIVE CERTIFIES THAT HE/SHE HAS THE LEGAL AUTHORITY TO ENTER INTO THIS AGREEMENT ON RESIDENT'S BEHALF PURSUANT TO A CURRENTLY VALID POWER OF ATTORNEY, GUARDIANSHIP, OR CONSERVATORSHIP THAT GRANTS THE REPRESENTATIVE THE AUTHORITY TO MEET ALL OF THE OBLIGATIONS UNDER THIS AGREEMENT. IF REPRESENTATIVE HAS MISREPRESENTED HIS/HER LEGAL AUTHORITY TO ACCESS THE RESIDENT'S FUNDS OR TO ENTER INTO THIS AGREEMENT ON BEHALF OF THE RESIDENT, OR IF REPRESENTATIVE HAS MISREPRESENTED ANY INFORMATION ON THE FINANCIAL APPLICATION FOR RESIDENCY, THEN REPRESENTATIVE AGREES TO BE PERSONALLY, JOINTLY AND SEVERALLY LIABLE FOR ALL OF RESIDENT'S RESPONSIBILITIES IN THIS AGREEMENT.

YOU AGREE THAT THERE ARE NO ACTUAL OR INTENDED THIRD PARTY BENEFICIARIES OF THIS AGREEMENT OTHER THAN THOSE PERSONS OR ENTITIES WHOSE NAMES ARE SIGNED BELOW. YOU HAVE READ ALL OF THE TERMS OF THIS AGREEMENT, AND YOU HAVE HAD AN

OPPORTUNITY TO ASK QUESTIONS REGARDING THOSE TERMS. YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO SEEK LEGAL COUNSEL REGARDING THIS AGREEMENT.

YOU DO FOR YOURSELF, AND YOUR HEIRS, ADMINISTRATORS AND EXECUTORS, AGREE TO THE TERMS OF THIS AGREEMENT IN CONSIDERATION OF THE FACILITY'S ACCEPTANCE OF AND RENDERING SERVICES TO THE RESIDENT.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have signed this Agreement as of the date first above written.

**RESIDENT**

_____
Signature

_____
Print Name

**REPRESENTATIVE**

_Michelle M Peterson_
Signature

_Michelle M Peterson_
Print Name

**HCF OF CORRY, INC.**

_Connie Frey_
Signature

_Connie Frey_
Print Name

# EXHIBIT B

# CORRY MANOR

## Care Community Residency Agreement

This Agreement is made and entered into this day of _December 29th_, 20_10_, by and between HCF of Corry, Inc. dba Corry Manor ("the Manor"), _Chris Pike_ ("Resident"), and _Levere Pike_ ("Representative"). Hereinafter, when capitalized, the term "You" shall refer jointly and severally to the Resident and the Representative.

In consideration of the mutual promises contained in this Agreement, Resident, Representative, and the Manor hereby agree as follows:

## I.   SERVICES

**A. Basic Services.** The Manor will provide room, board, laundry, housekeeping, social, activities and general nursing services (collectively, the "Basic Services") to the Resident. Basic Services do not include special duty nursing care, special equipment, therapy, transportation, medications, guest meals, laboratory and x-ray services, medical supplies, personal comfort items, beauty /barber shop services, and miscellaneous personal services.

**B. Additional Services.** In addition to the Basic Services, the Manor will provide additional non-routine services and supplies ("Additional Services") in accordance with the orders of the Resident's attending physician and/or upon the Resident's request or consent. The Resident will be invoiced for additional services at the Manor's standard fee schedule.

**C. Services of Other Providers.** The Resident may receive services from outside providers in the Manor so long as the outside provider is properly licensed and certified under the law, complies with all applicable government rules and the Manor policies, and enters into an agreement to provide services with the Manor, if applicable.

## II.   CHARGES AND FEES

**A. Responsibility for Payment.**

You shall pay all charges and fees for services that are billed to You by the Manor.

1. <u>No Personal Liability of Representative</u>. All financial obligations in this Agreement are the Resident's, and, except as specifically provided otherwise in the Agreement or as agreed to by Representative, nothing in this Agreement shall be construed to require that a Representative is in any way personally liable to pay for services rendered by the Manor to the Resident.

2. <u>Duty of Representative on Behalf of Resident</u>. During the term of his/her residency, the Resident may need assistance in arranging for payment for the services provided. You have asserted to the Manor that the Representative shall act in a fiduciary capacity on the Resident's behalf to satisfy the Resident's financial obligations under this Agreement if the Resident chooses not to, or is unable to, meet those obligations. The Resident shall be primarily responsible for making payments to the Manor until such time as he/she assigns the responsibility for making payment to the Representative or until he/she can no longer make payments on his/her own behalf; at such time, the Representative shall become primarily responsible for making such payments.

3. <u>Legal Authority to Access Resident's Funds</u>. You have asserted that the Representative has legal access to the Resident's income, assets or resources, including, but not limited to, social security, pension or retirement funds, annuities, insurance, bank accounts, and mutual funds; and, You understand that the Manor is entering into this Agreement in reliance on that assertion. You agree that all such resources shall be considered the Resident's resources for purposes of this Agreement. You agree that if any of these resources transfer by operation of law while

the Resident still has outstanding debts to the Manor and such transfer causes the Resident's remaining resources to be insufficient to pay the debt in full, then the Representative shall be personally responsible for the remaining debt to the Manor.

4. Limitation on Legal Authority to Act on Behalf of Resident. You hereby certify that no one else has financial access or control over the Resident's income, resources and assets, and that You will not grant any other person or entity access or control over said income, resources or assets (with the exception of the Manor) during the term of this Agreement, unless such other person or entity first becomes a party to this Agreement.

5. Diversion of Resident's Resources. Representative agrees to be a good financial steward of the Resident's income, resources and assets over which he/she has control. Representative understands and agrees that the misappropriation, theft or redirection of those resources so that the Resident's financial obligations under this Agreement are not met is a violation of this Agreement, and may constitute a crime. If any payments or funds of the Resident that are available to pay for the Resident's care are withheld, misappropriated for personal use, or otherwise not turned over to the Manor for payment of the Resident's financial obligations under this Agreement, then Representative agrees to pay those amounts to the Manor from the Representative's own resources. In addition, the Representative agrees to pay from his/her own resources any unpaid charges due to the Manor as a result of the Representative's failure to cooperate in the Medicaid eligibility or redetermination process.

6. Billing to Health Insurance Plans. The Manor will bill the Resident's health insurance plan as a service to You. You shall pay the Manor as a Private Pay Resident if the plan does not agree to pay the Manor directly. You also must pay the Manor promptly if your insurance plan does not pay the Manor within forty-five (45) days of billing.

B. Payment Source.

The Resident will be admitted to the Manor with a primary pay status of

_____*Medicare*_____

If the Resident is admitted Medicare primary, the payer source for co-payments is _____*Private Pay*_____

1. Private Pay Residents. You shall pay in full and in advance each month, a sum equal to one month of Basic Rate charges as set forth in the Rate Schedule. **You must pay the advanced payment by the last business day of the month prior to which services are to be received.** In addition, You shall pay in full all charges for Additional Services incurred in the preceding month for which no advance payment was received by the Manor, as well as any applicable co-payments for therapy and other services incurred during the preceding month that are billed under Part B of the Medicare program, upon receipt of an invoice from the Manor. If the Resident is covered by a health insurance plan, health maintenance organization or other third party payer (other than Medicare or Medicaid), You shall pay all costs not covered by such third party payer, including, without limitation, applicable co-insurance and deductible amounts, and other amounts not timely paid by the third party payer, except and to the extent prohibited by law.

2. Insurance / Managed Care Residents. You are responsible to pay for all services and supplies that the Resident receives. If You arrange to have certain of those services and supplies covered by a health insurance plan, health maintenance organization or other third party payer (other than Medicare or Medicaid), You shall pay all costs not covered by such third party payer, including, without limitation, applicable co-insurance and deductible amounts, and other amounts not paid timely by the third party payer in accordance with this Agreement, except and to the extent prohibited by law.

3. Medicare Residents.

a. Eligibility for Medicare Part A coverage. If certain conditions are met, Medicare Part A pays fully for the first 20 days of care in a skilled nursing facility. For the 21st through the

100th day, the Resident must share, or co-pay, for the cost of care by paying a daily coinsurance rate, which changes yearly. Note that while there is a Medicare-eligibility period of 100 days, the Resident is not guaranteed the use of all 100 days.

b.  Medicare Part B Coverage. Medicare Part B may help pay for covered services the Resident receives in the Manor, if the Resident chooses to participate in the Part B medical insurance program. For example, if the Resident uses up his/her Part A coverage for a spell of illness, Part B also covers a portion of services received in the Manor, such as physical and occupational therapy. Under the Part B program, the Resident must pay an annual premium and a deductible for all Part B services after which Medicare pays 80 percent of the reasonable charges for covered services.

c.  **Resident's Share of Costs. A Resident who is a Medicare beneficiary is responsible for payment of all services and supplies provided to the Resident by the Manor. The Manor will bill Medicare on the Resident's behalf for all Medicare-covered services and supplies provided to the Resident, if allowed. The services and supplies covered by the Medicare program are listed on the Rate Schedule. You shall pay the Manor all required Medicare co-insurance and deductible amounts (including, without limitation, twenty percent (20%) of all amounts billed for therapy services and all other services covered under Part B of the Medicare program) together with fees for all non-covered items and services provided by the Manor.**

d.  Responsibility for Payment if Medicare Coverage Denied or Terminated. You understand that Medicare coverage and eligibility is established by Federal guidelines that may change from time-to-time. You agree to apply promptly for any applicable Medicare benefits. The Manor will assist You in applying for Medicare coverage for the Resident; however, You acknowledge that the Federal government and not the Manor make the determination of Medicare coverage. The Manor makes no guarantee, representation, or warranty that Resident will be covered by Medicare, or if initially covered will continue to be covered. You are required to pay the Manor at the private-pay rate for all charges incurred by the Resident in the event that a Resident's application for Medicare coverage is denied or if the Resident's eligibility for Medicare coverage expires.

4.  Medicaid Residents.

a.  **Resident's Share of Costs. A Resident who is a Medicaid beneficiary is responsible for payment of all services and supplies provided to the Resident by the Manor. The Manor will bill Medicaid on the Resident's behalf for all Medicaid covered services provided to the Resident by the Manor. The services and supplies covered by the Medicaid program are listed on the Rate Schedule. You understand that Medicaid does not pay the full amount of the charges for services and supplies provided by the Manor. The Medicaid agency will determine an amount that the Resident must pay to the Manor. You shall pay the Manor any amount that Medicaid does not pay for the services and supplies provided to the Resident, as required by applicable State regulations. You shall also pay the charges for all non-covered items and services provided by the Manor upon receipt of an invoice.**

b.  Responsibility for Payment if Medicaid Coverage Denied or Terminated. You are responsible for applying for or renewing the Resident's Medicaid coverage. While the Manor may assist You in applying for Medicaid coverage, the Manor does not guarantee that Medicaid coverage will be available to the Resident. If the Resident's application for Medicaid coverage is denied or if the Resident becomes ineligible at any time for Medicaid coverage, You shall be required to pay the Manor the private-pay rate for all charges incurred by the Resident.

5.  Medicaid Applications.

a.  Notification for Advance Planning. You agree to inform the Manor when the Resident's assets reach $15,000. In addition, if the

Resident does not have monthly income sufficient to pay for the cost of care and services (e.g., the Basic Rate and for Additional Services), You agree to apply for Medicaid or to promptly make arrangements to pay for the Resident's continued stay at the Manor when the Resident's assets reach $5,000.

b. Improper Transfers. When applying for Medicaid, the government may examine all transfers of property and resources that the Resident has made (or that were made on his/her behalf) and all trusts created for the past five (5) years, to determine if any improper transfers were made. The government presumes that any transfer of property or resources five (5) years prior to a Medicaid application is improper if the transfer made the Resident Medicaid-eligible, divested the Resident of proceeds that would be available if the property were sold, or if the Resident transfers income producing property or resources. Examples of improper transfers could include: the transfer of the Resident's house, car and other personal property, the transfer of the Resident's bank accounts, stocks or bonds, the transfer of real estate, and the creation of certain trusts. If an improper transfer of the Resident's resources was made, then the Resident will not be eligible to receive Medicaid assistance for a designated period of time from the date the application for assistance is made.

In the event that the Resident's eligibility for Medicaid benefits is denied, interrupted or terminated for any reason, including due to the government's determination that improper transfers of resources were made, then You agree to make alternative arrangements to ensure that the Manor's charges are paid. If You fail to pay the Manor's charges in full in this circumstance, this Agreement may be terminated and the Resident discharged.

**Are You aware of any transfers of the Resident's property or resources, or any trusts that have been created, in the past five (5) years?** *Please initial below.*

Yes _____    No _____
     Initial              Initial

c. Continued Payment to the Manor During Application Process. The filing of an application for Medicaid does not excuse You from continuing to make payment to the Manor in accordance with the terms of this Agreement. While the Resident's application is being reviewed for Medicaid eligibility, You agree to assign or continue to pay the resource amount estimated by and/or billed from the Manor. **You must make all resource / income payments by the fifth (5th) day of each month for which services are received.** If payment is made for any period during which the Resident is later determined to be eligible for Medicaid, a prompt refund will be made by the Manor in accordance with applicable law, deducting resident liability or other amounts due privately.

d. Cooperation in Application Process. You are obligated to make full and complete disclosure regarding all financial resources and income during the Medicaid application process, and to cooperate fully in providing all requested information. You agree to act promptly to establish and maintain the Resident's eligibility for Medicaid, including, but not limited to, taking any and all necessary action to ensure that the Resident's assets are appropriately reduced to and remain within allowable limits for Medicaid as established by applicable law.

e. Requirements if Approved for Coverage. **You understand that if the Resident is approved for Medicaid, then the law requires that all of the Resident's income, assets, and resources (other than a small amount set aside for personal needs), including but not limited to, his or her Social Security payment, pension or retirement fund, annuities or insurance, or revenues from the sale of a house, must be used to pay for the Resident's care at the Manor. The Resident's income may not be used to pay rent, utilities, previous debts or any other financial obligations outside of the facility. Some of the Resident's resources may be exempted by the government if he/she has a spouse who still lives at home.**

f. Designation of Authorized Representative. You agree to inform the Manor of the status

and progress of the Medicaid application process and, upon the request of the Manor, to provide the Manor with copies of any information and documentation supplied in connection with the application. In addition, You hereby designate the Manor as an "Authorized Representative" of the Resident. As an Authorized Representative, the Manor shall have whatever powers are granted to it under the law and the operating procedures of the applicable State agency, including, but not limited to, the power to commence, complete and submit applications for Medicaid to the appropriate State agency; to appeal the denial of any application; to obtain information at any time about any application, reapplication or appeal from any person or entity having such information, including the State's Medicaid agency; and to submit a hardship waiver request to the State agency when appropriate. The granting of this power does not relieve You of your duty to represent yourself in the Medicaid application and appeal process, or to assist the Manor in providing all information necessary for the Medicaid application process. Whether and how the Manor chooses to exercise this power shall be entirely in its sole discretion.

g.  No Guarantee, Representation or Warranty of Coverage.  You understand that merely applying for financial assistance from Medicaid does not mean that the Resident will receive such assistance. The Manor makes no guarantee, representation or warranty that Resident will be eligible for Medicaid coverage, nor that the Resident will maintain such eligibility if covered at any point. You understand that the government, and not the Manor, makes the determination of eligibility for Medicaid coverage.

h.  Future ineligibility.  If the Resident receives any income, assets or resources in the future that result in the Resident's ineligibility for Medicaid, You agree that such income, resources or assets will be used to pay for the private-pay cost of care and services rendered to the Resident until the Resident is determined to be eligible for Medicaid again in accordance with applicable law.

C.  Assignment of Benefits.  You hereby direct all payments made on Resident's behalf by third party payers, including payments from Medicare and Medicaid, to be made directly to the Manor for any services furnished by the Manor. If Resident is or will be a Medicaid recipient, then in addition You hereby direct all resource payments made to the Resident or on Resident's behalf, including payments from the Social Security Administration and pension benefits, to be made directly to the Manor. You agree to take any steps necessary to implement this assignment of benefits, such as redirecting the direct deposit of Social Security Administration funds or filling out an application to make the Manor the Resident's Representative Payee.

D.  Payment Due Date; Late Charges; Authorization for Release.  *Private Pay:* You must pay the Basic Rate no later than the last business day of the month prior to which services are to be received and any amounts due for Additional Services within thirty (30) days of the date of invoice. *Medicaid / Medicaid Pending:* You must pay all resources/income no later than the fifth (5th) day of each month that services are received and any amounts due for Additional Services within thirty (30) days of the date of invoice. If any charge or fee is not paid on the date that such payment is due, interest at the rate of one and one-half percent (1.5%) will be added each month to the unpaid balance of such charge, effective as of the date the balance was originally due until the date the balance is paid in full. In addition, if the Manor retains the services of a collection agency or an attorney to obtain the payment of amounts due hereunder, the Manor shall be entitled to recover from the Resident all collection agency and attorney's fees, court costs and other collection expenses. You authorize the Manor to release information about your residency, the services provided and any debts owed in attempting to collect amounts due and not paid.

E.  Rate Changes.  The Basic Rate may be adjusted by the Manor at any time upon thirty (30) days advance written notice to the Resident. Current charges for Additional Services are available to You upon request. In addition, if the Resident's payment source changes at any time during the Resident's stay

*Form A-0187 HCF*

©2009 HCF May be reproduced with attribution
9/09

at the Manor, the Manor's fees and charges to be paid by You may be adjusted immediately.

F. **Refunds.** Within sixty (60) days from the date the Manor determines that an overpayment has occurred, the Manor shall refund such overpaid amounts. Overpayments include, but not limited to, third party payments received for services already paid for by You, private pay advance payments for days following the discharge or death of the Resident.

G. **Obligation to Keep the Manor Informed.** You will inform the Manor as soon as possible if: (1) the Resident's assets reach a value of $15,000 or less due to a transfer of any property, money or stock to another person or entity or similar transaction; (2) a decision has been made to have the Resident switch or join insurance companies or managed care programs; or (3) if the Resident is currently having services paid for by Medicaid, the Resident inherits any property or money, or receives property or money as a gift. You agree to provide the Manor with an accurate financial statement of the Resident's income and resources in a format requested or approved by the Manor upon request by the Manor.

H. **Disputed Debts.** You are responsible for payment in full of all amounts due and owing to the Manor. If you disagree with a charge, you must notify the Administrator in writing of any dispute, and provide reasons and evidence of why you believe the charge is incorrect, within thirty (30) days after receipt of the first invoice that includes the disputed charge. If you do not submit such a written notification, then all charges shall be deemed accurate and any dispute will be deemed waived. All communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent directly to the Administrator of the Manor in writing.

I. **No Legal or Equitable Interest.** You have no legal or equitable interest in the real or personal property of the Manor. The privileges under this Agreement are personal to the Resident and may not be assigned,

sold or transferred by the Resident.

## III.  TERMINATION

A. **Term.** This Agreement shall continue until it is terminated as specified in sections III.B. or III.C. of this Agreement.

B. **Termination by Resident.** You may terminate this Agreement at any time; however, the Manor requests that You provide it with at least three (3) days advance notice so that it can conduct proper discharge planning. The Manor has established twelve (12) noon as the discharge time. In order to avoid a charge for the day of discharge, the Resident must discharge before twelve (12) noon This Agreement shall automatically terminate upon the death of the Resident.

C. **Termination by the Manor.** This Agreement may be terminated by the Manor upon any of the following events, subject to State and Federal transfer and discharge provisions: (1) the Resident's failure to make payment or have payment made on his/her behalf in accordance with Article II of this Agreement; (2) discharge from the Manor; (3) the Resident's continued stay jeopardizes the health, safety or welfare of this Resident or other residents of the Manor; and (4) the Manor's license or certification has been revoked, renewal denied, or the Manor is voluntarily closed.

D. **Financial Obligations upon Termination.** You agree that all accrued charges and fees must be paid prior to the effective date of termination or, if later, on the date You receive a final bill. Your duty to pay for all items and services billed by the Manor shall survive the termination of the Agreement.

E. **Effect of Termination and Holdover.** After the Agreement is terminated, You agree that You will ensure that the Resident moves out of the Manor. This includes moving out of the Manor by the date specified in the discharge notice in the event of an involuntary discharge. If the Resident does not move out of the Manor by the termination date, then You agree that the Resident shall pay the Manor a per diem rate equal to two times the Manor's then-current private pay rate for all days that the Resident remains in the Manor after

©2009 HCF May be reproduced with attribution
9/09

termination of the Agreement. You agree to pay all of the Manor's expenses, including attorney's fees and court costs, for any legal action commenced by the Manor to enforce its rights to discharge or otherwise remove the Resident from the Manor.

## IV.  MISCELLANEOUS

A. **Notifications; Exercising Rights for Resident.** By signing this Agreement, the Representative is certifying that he/she: (1) has an interest or responsibility in the Resident's welfare; and (2) has been identified to the Manor as the person responsible for exercising the rights of the Resident if and when he/she is mentally and/or physically incapable of exercising such rights on his or her own behalf. You have identified the Representative as the person to be notified whenever such notifications are necessary as required by law or in the judgment of the Manor.

B. **Nondiscrimination.** The Manor offers its services to persons whose needs can be met by the Manor, without regard to race, creed, sex, age, religion, national origin, handicap, or disability.

C. **Waiver.** The failure of the Manor in any one or more instances, to insist upon strict compliance by You with, or its waiver of any breach of, any of the terms or provisions of this Agreement, shall not be construed to be a waiver by the Manor of its rights to insist upon strict compliance by You with all of the terms and provisions of this Agreement.

D. **Partial Illegality.** If any portion of this Agreement is determined to be illegal or not in conformity with applicable laws and regulations, such part shall be deemed to be modified so as to be in accordance with such laws and regulations, and the validity of the balance of this Agreement shall not be affected. This Agreement shall be construed in accordance with the laws of the State of Pennsylvania, and the county in which the Manor is located shall be the sole and exclusive venue for any legal dispute between the parties.

E. **Complete Agreement; Amendments.** The Manor is not liable for, nor bound in any

manner by, any statements, representations or promises made by any person representing or purporting to represent the Manor, unless such statements, representations or promises are set forth in writing and made a part of this Agreement. Modification of this Agreement may be made only by agreement of both/all the parties in writing; provided, however, the Manor reserves the right to amend the Agreement at any time in order to conform to changes in Federal, State, or local laws or regulations that require modifying the Agreement. The Manor will notify You of its intent to make any such modification at least thirty (30) days prior to making the modification.

F. **Assignment.** No assignment of this Agreement or the rights and obligations hereunder shall be valid without the specific written consent of both parties hereto, provided, however, that this Agreement may be assigned by the Manor or the Organization to any successor entity operating it, and such assignment shall forever release the Manor hereunder.

G. **Representation of Accuracy.** You represent that the information contained on the application forms, financial statements, this Agreement, and Resident's health history are true to the best of your knowledge and belief. You understand that the Manor has relied upon such information and agree that if any of the facts were misrepresented or any important information was left out, then such action may result in a discharge of the Resident.

H. **Incorporation of Other Documents.** The following documents are hereby incorporated into this Agreement by reference: all attached rate schedules and all of the Manor's policies governing the Resident's responsibilities, as may be amended from time-to-time by the Manor in its sole discretion; all application forms, financial statements, and medical records provided to the Manor as part of the Resident's application for admission to the Manor; the Resident Handbook; the Rate Schedule; and all documents that You signed or received during the admission process to the Manor.

©2009 HCF May be reproduced with attribution
9/09

I.   **Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

## V. AGREEMENT TO RESOLVE LEGAL DISPUTES THROUGH ARBITRATION

The parties wish to work together to resolve any disputes in a timely fashion and in a manner that they believe will minimize both of their legal costs. Therefore, in consideration of the mutual promises contained in this Agreement, You and the Manor hereby agree to submit disputes that represent a recognized cause of action in a court of law to binding arbitration, as follows:

A.   **Disputes to Be Arbitrated.** Any legal controversy, dispute, disagreement or claim of any kind now existing or occurring in the future between the parties arising out of or in any way relating to this Agreement or the Resident's stay at the Manor shall be settled by binding arbitration, including, but not limited to, all claims based on breach of contract, negligence, medical malpractice, tort, breach of statutory duty, resident's rights, and any departures from accepted standards of care. This includes claims against the Manor, its employees, agents, officers, directors, any parent, subsidiary or affiliate of the Manor.

B.   **Binding Nature of Arbitration.** The decision rendered by the arbitrator shall be final and binding, and judgment on the award, if any, shall be entered in accordance with applicable law in any court having jurisdiction thereof. There shall be no appeal of the arbitrator's decision by either party. The decision of the arbitrator shall be binding on all of the parties to the arbitration, and also on their successors and assigns, including the agents and employees of the Manor, and all persons whose claim is derived through or on behalf of Resident, including, but not limited to, that of any parent, spouse, child, guardian, executor, administrator, legal representative, or heir of Resident.

C.   **Who Will Conduct Arbitration.** The arbitration shall be conducted by the National Arbitration and Mediation ("NAM"). Information regarding NAM and a copy of pertinent rules and forms may be located at NAM's website, www.namadr.com; by contacting NAM toll-free at 800-358-2550, by fax at 516-794-8518; or at 990 Stewart Avenue, Garden City, NY 11530. If the NAM process is no longer in existence at the time of the dispute, or NAM is unwilling or unable to conduct the arbitration, then the parties shall mutually agree on an alternative organization to conduct the arbitration.

D.   **Costs of Arbitration.** The parties agree that all filing fees shall be shared equally by Resident and the Manor. Thereafter, each party agrees to be responsible for their own fees, expenses and costs as attributed to them pursuant to the NAM rules and procedures, unless ordered otherwise by the arbitrator. Each party agrees to be responsible for their own attorney fees and costs, if any.

E.   **How to Request Arbitration.** Any party desiring arbitration shall file a claim with NAM. All necessary forms, rules and procedures are available through NAM, and claims may be submitted online.

F.   **Rules of Arbitration.** Regardless of who conducts the arbitration, it shall be conducted in accordance with the NAM rules and procedures, which is hereby incorporated into this Agreement by reference. Except as set forth in the NAM rules and procedures, the arbitration proceedings shall follow all rules of civil procedure and evidence. Statutes of limitation and award caps that would be applicable to a comparable civil action brought in an appropriate court in the county in which the Manor is located shall apply to the arbitration and any award. All claims based in whole or in part on the same incident, transaction, or related course of care and services provided by the Manor to Resident shall be arbitrated in one proceeding. A claim shall be waived and forever barred if it arose prior to the date upon which notice of arbitration is received by the Manor or the Resident, and is not presented in the arbitration proceeding.

G.   **Laws Governing Arbitration.** This agreement to arbitrate disputes and the arbitration proceeding shall be governed in accordance with the Federal Arbitration Act. If for any

©2009 HCF May be reproduced with attribution
9/09

reason there is a finding that the Federal Arbitration Act cannot be applied to this Agreement, then the parties hereby make clear their intent that their disputes/claims be resolved pursuant to Title 37, Subpart H of the Pennsylvania Code, and that the parties do not want their disputes/claims resolved in a judicial forum.

H. **Confidentiality.** You and the Manor agree to keep all arbitration proceedings strictly confidential, and hereby direct any organization overseeing the arbitration process, and any arbitrator to do the same. The fact that a dispute was settled or a judgment issued, and the details of the foregoing, may not be released without an express written authorization from both the Resident and the Manor, unless otherwise required by law.

I. **Canceling the Arbitration Provision.** You, or the Resident's spouse or the personal representative of the Resident's estate in the event of the Resident's death or incapacity, has the right to cancel this Section V of the Agreement by notifying the Manor in writing. Such notice must be sent via certified mail to the attention of the Administrator of the Manor, and the notice must be post marked within thirty (30) days of the date upon which

this Agreement was signed. Instead of mailing, the notice may be hand-delivered to the Administrator within the same thirty (30) day time period. The filing of a claim in a court of law within the thirty (30) days provided for above will cancel this Section V of the Agreement without any further action by the Resident.

J. **Resident Understanding & Acknowledgment Regarding Arbitration.** By signing this Agreement, You acknowledge that You have been informed that: (1) This arbitration provision shall not limit in any way Your right to file formal or informal grievances with the Manor or the State or Federal government; (2) Signing this Agreement is not a condition of admission, and that care and treatment will be provided whether or not You sign this Agreement (if the Resident does not wish to sign the Agreement with this provision in it, please ask to have it removed); (3) The decision whether to sign the Agreement is solely a matter for Your determination without any influence; (4) THE AGREEMENT WAIVES YOUR RIGHT TO A TRIAL IN COURT AND A TRIAL BY A JURY FOR ANY LEGAL CLAIMS YOU MAY HAVE AGAINST THE MANOR; and (5) You have the right to seek legal counsel regarding this Agreement.

THE RESIDENT GIVES PERMISSION TO THE REPRESENTATIVE TO SIGN ANY AND ALL DOCUMENTS THAT ARE PART OF THE ADMISSION PROCESS TO THE MANOR ON THE RESIDENT'S BEHALF AS HIS OR HER AGENT. THE RESIDENT AGREES THAT IN SIGNING ON HIS OR HER BEHALF, THE REPRESENTATIVE BINDS THE RESIDENT TO ALL DUTIES IMPOSED BY SUCH DOCUMENTS AS IF THE RESIDENT HAD SIGNED THEM HIMSELF OR HERSELF, INCLUDING THE DUTY TO PAY THE MANOR FOR SERVICES RENDERED.

THE REPRESENTATIVE CERTIFIES THAT HE/SHE HAS THE LEGAL AUTHORITY TO ENTER INTO THIS AGREEMENT ON RESIDENT'S BEHALF PURSUANT TO A CURRENTLY VALID POWER OF ATTORNEY, GUARDIANSHIP, OR CONSERVATORSHIP THAT GRANTS THE REPRESENTATIVE THE AUTHORITY TO MEET ALL OF THE OBLIGATIONS UNDER THIS AGREEMENT. IF REPRESENTATIVE HAS MISREPRESENTED HIS/HER LEGAL AUTHORITY TO ACCESS THE RESIDENT'S FUNDS OR TO ENTER INTO THIS AGREEMENT ON BEHALF OF THE RESIDENT, OR IF REPRESENTATIVE HAS MISREPRESENTED ANY INFORMATION ON THE FINANCIAL APPLICATION FOR RESIDENCY, THEN REPRESENTATIVE AGREES TO BE PERSONALLY, JOINTLY AND SEVERALLY LIABLE FOR ALL OF RESIDENT'S RESPONSIBILITIES IN THIS AGREEMENT.

YOU AGREE THAT THERE ARE NO ACTUAL OR INTENDED THIRD PARTY BENEFICIARIES OF THIS AGREEMENT OTHER THAN THOSE PERSONS OR ENTITIES WHOSE NAMES ARE SIGNED BELOW. YOU HAVE READ ALL OF THE TERMS OF THIS AGREEMENT, AND YOU HAVE HAD AN

OPPORTUNITY TO ASK QUESTIONS REGARDING THOSE TERMS. YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO SEEK LEGAL COUNSEL REGARDING THIS AGREEMENT,

YOU DO FOR YOURSELF, AND YOUR HEIRS, ADMINISTRATORS AND EXECUTORS, AGREE TO THE TERMS OF THIS AGREEMENT IN CONSIDERATION OF THE FACILITY'S ACCEPTANCE OF AND RENDERING SERVICES TO THE RESIDENT.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have signed this Agreement as of the date first above written.

**RESIDENT**

_____
Signature

_____
Print Name

**REPRESENTATIVE**

~LeVere C Pike H~
_____
Signature

LeVere C Pikell
_____
Print Name

**HCF OF CORRY, INC.**

_Barbara A. Hyde_
_____
Signature

_Barbara A. Hyder_
_____
Print Name

# EXHIBIT C



STATEMENT

Corry Manor
640 Worth Street
Corry, PA 164071478
(814) 664-9606

| Resident: | Pike, Doris (2161) |
| Location: | |
| Statement Date: | 11/1/2011 |

ALL TRANSACTIONS PROCESSED AFTER Oct 14, 2011
WILL APPEAR ON YOUR NEXT STATEMENT

LeVere Pike
5500 Button Valley Road
Ashville, NY 14710

AMOUNT
ENCLOSED   $ _____

Please make checks payable to Corry Manor

PLEASE DETACH AND RETURN WITH YOUR PAYMENT

Corry Manor
640 Worth Street
Corry, PA 164071478
(814) 664-9606

Resident: Pike, Doris (2161)
Location: -
Statement Date: 11/1/2011

| Effective Date | Description | Tax 1 | Tax 2 | Units | Unit Amount | Amount |
|---|---|---|---|---|---|---|
| | **BALANCE FORWARD** | | | | | $8,046.76 |
| 9/22/2011 | Payment - #PC#138 | | | | | ($25.00) |
| 10/5/2011 | Payment - #PC# 141 | | | | | ($25.00) |
| | **BALANCE DUE** | | | | | $7,996.76 |

| STATEMENT SUMMARY | |
|---|---|
| Previous Balance | $8,046.76 |
| Payments | ($50.00) |
| Current Charges | $0.00 |
| Total Amount Due | $7,996.76 |

# EXHIBIT C

IN THE COURT OF COMMON PLEAS
OF ERIE COUNTY PENNSYLVANIA

COMMON PLEAS COURT
ERIE, PA

2012 MAR 26   AM 8: 51

CLERK OF RECORDS
PROTHONOTARY

HFC OF CORRY, INC.
d/b/a CORRY MANOR,

                         Plaintiff,

     v.

LEVERE C. PIKE, JR.,
JONI EADES, &
MICHELLE PETERSON,

                         Defendants.

*14407-11*

No. ~~1440-11~~

ANSWER, AFFIRMATIVE
DEFENSES, AND
OBJECTIONS

LAVERE C. PIKE, JR. ("Pike"), by and through his attorneys, Law Offices of Kenneth Hiller PLLC, states the following in answer to the complaint of the Plaintiff:

1. Defendant Pike granted a duly executed Power of Attorney authorizing Joni Eades to act on his behalf in any matters related to litigation. A copy of the Power of Attorney is annexed hereto as Exhibit A.

2. The aforementioned Power of Attorney has not been revoked.

3. Defendant Pike admits the allegations contained in paragraphs 1, 2, 3, 7, 17, 23, 35 and 47 of Plaintiff's complaint.

4. Defendant Pike denies the allegations contained in paragraphs 4, 20, 21, 24, 28, 29, and 33 as well as all allegations contained in Plaintiff's complaint that are not admitted, denied or otherwise controverted herein.

5. Defendant Pike denies sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraphs 10, 11, 13, 14, 33, 36, 38, 40, 41, 45, 49 and 55.

6. With respect to the allegations contained in paragraphs 5 and 6 of Plaintiff's complaint, Defendant Pike admits that Michelle Peterson signed the agreement annexed as Exhibit A to Plaintiff's complaint, and that its' provisions are accurately described in the complaint. However, Defendant Pike lacks information upon which to form a reasonable belief as to validity of said contract, or the legal obligations, if any, imposed on Michelle Peterson by virtue of her signing said document.

7. With respect to the allegations contained in paragraphs 8, 9, 18 and 20 of Plaintiff's complaint, Defendant Pike admits that he signed the agreement

annexed as Exhibit B to Plaintiff's complaint, and that its' provisions are accurately described in the complaint. However, Defendant Pike denies that said agreement was a legally binding agreement as it was induced by fraud, deception, unconscionable conduct, duress and was otherwise unconscionable and illegal. As such, it did not impose any legal obligations upon him.

8. With respect to allegations contained in paragraph 12 and 19 of Plaintiff's complaint, Defendant Pike denies he was ever in possession of any non-exempt resources belonging to Doris Pike from which he could pay Plaintiff.

9. With respect to the allegations contained in paragraph 13 of Plaintiff's complaint, Defendant Pike admits that he did not use Doris Pike's resources to pay Corry Manor for the cost of services Corry Manor provided to Doris Pike, but denies that he had any custody or control over the resources of Doris Pike, or that he had any legal obligation to pay or provide said resources to the Defendant.

10. With respect to the allegations contained in paragraph 15 and 51 of Plaintiff's complaint, denies sufficient information to form a belief as to the truth or falsity of the allegations contained therein, and further denies he has any liability to pay any amount that might be due under the Agreement.

11. With respect to the allegations contained in paragraph 16, 22, 30, 34, 42, 46, 52 of Plaintiff's complaint, Defendant Pike repeats and realleges his response to each allegation in Plaintiff's complaint as if fully set forth and realleged herein.

12. With respect to the allegations contained in paragraphs 25, 27, 31, 32, 37, 39, 43, 44, 53, and 54 of Plaintiff complaint, Defendant Pike asserts that said allegations are improperly pled, unduly vague and do not allow for a reasoned response. Nonetheless, to preserve his rights, Defendant Pike denies the allegations contained in said paragraphs to the extent they may be found to require a response.

13. With respect to the allegations contained in paragraph 26 of Plaintiff's complaint, Defendant Eades alleges that he has made some payments towards the outstanding balance owed to Corry Manor, but admits that he has not paid the entire outstanding balance.

14. Paragraphs 48, 50 of Plaintiff's complaint allege legal conclusions that can only be determined by this Court. Nonetheless, to preserve his rights, Defendant Pike denies the allegations contained in said paragraphs to the extent they may be found to require a response.

**AS AND FOR HIS PRELIMNARY OBJECTIONS TO THE COMPLAINT OF PLAINTIFF, DEFENDANT PIKE ALLEGES AS FOLLOWS:**

15. Defendant Pike is a resident of the State of New York and has no contacts whatsoever with the Commonwealth of Pennsylvania. As such, this Court does not have personal jurisdiction over Defendant Pike.

16. This Court does not have subject matter jurisdiction over this case given the fact that Defendant Pike has no contacts with the Commonwealth of Pennsylvania.

17. Plaintiff's complaint makes numerous allegations indicating that certain conduct "may" have occurred. Such allegations are insufficient as a matter of law.

18. The Defendant does not have standing to bring this lawsuit.

19. Plaintiff and Defendant Pike agreed to submit any controversies arising between them to binding arbitration. As such, this case should be stayed or dismissed so that they may proceed through arbitration.

20. The allegations contained in Plaintiff's complaint are vague, conclusory, and insufficient

**AS AND FOR HIS AFFIRMATIVE DEFENSES, DEFENDANT PIKE ALLEGES:**

21. The decedent, Doris Pike was not indigent at the time of her admission to Plaintiff's facility or at any time thereafter.

22. Defendant Pike did not, and does not have sufficient financial ability to support Doris Pike.

23. Plaintiff and Defendant Pike agreed to submit any controversies arising between them to binding arbitration. As such, this case should be stayed or dismissed so that they may proceed through arbitration.

24. The terms of the agreement entered into between Plaintiff and Defendant Pike were unconscionable.

25. Defendant Pike signed the agreement referenced in Plaintiff's complaint while under duress.

26. Plaintiff made false and material representations to Defendant Pike to induce him to sign the agreement annexed to Plaintiff's complaint.

27. Defendant Pike reasonably relied upon, and was justified in relying upon the false representations made by Plaintiff to induce him to sign the agreement annexed to Plaintiff's complaint.

28. Defendant has failed to state a cause upon which relief may be granted.

29. Defendant is barred from enforcing the parties agreement and from pursuing any other of its' claims against Defendant Pike by reason of the doctrine of unclean hands.

Respectfully submitted,

Dated: March 23, 2012

By: _Valerie N. Sylves_
Valerie Sylves, Esq.
Attorney I.D. No. 311139

Law Offices of Kenneth Hiller PLLC
6000 North Bailey Avenue, Ste. 1A
Amherst, New York  14226
(716) 564-3288

Attorneys for Lavere Pike, Jr.

## VERIFICATION

The undersigned hereby verifies the statements of fact in the foregoing document are true and correct to the best of his or her knowledge, information and belief. He or she understands any false statements are subject to the penalties contained in 18 Pa. C.S.§4904 relating to unsworn falsification to authorities.

Dated: March 22, 2012

Lavere Pike, Jr., by Jeanie Eades as power of attorney for Lavere Pike, Jr.

## AFFIDAVIT OF SERVICE BY FIRST CLASS MAIL

CITY OF NEW YORK      )
                                ) ss.:
COUNTY OF NEW YORK   )

         JANINA MATYS, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at BROOKLYN, NEW YORK.

         That on 19th day of February, 2013 deponent served the within **AFFIRMATION OF KIRA TSIRING, ESQ. WITH EXHIBITS** upon:

Seth J. Andrews, Esq.
THE LAW OFFICES OF KENNETH HILLER, PLLC
6000 North Bailey Ave., Suite 1A
Amhurst, New York 14226

*Attorneys for* Plaintiff in this action, at the above address designated by said *attorneys* for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office Department within the State of New York.

                                    _____
                                       JANINA MATYS

Sworn to before me this
19th day of February, 2013

_____
       Notary Public

                                 KIRA TSIRING
                      Notary Public, State of New York
                            No. 02TS6185561
                      Qualified in Kings County
                    Commission Expires April 21, 2016

98710