UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JONI EADES AND LEVERE C. PIKE, JR.,

                              Plaintiffs,

v.                                                           Civil Action No. 12-cv-6680

KENNEDY, PC. LAW OFFICES,

                              Defendant.

---

## PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to Defendant's Motion to dismiss this case pursuant to Rules 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure.

## FACTS OF THE CASE

Doris Pike and Levere Pike resided as husband and wife in the State of New York. Doris Eades subsequently was placed in the Corry Manor nursing home in the State of Pennsylvania. In connection with that placement, Corry Manor illegally required Mr. Pike to guarantee payment for all services rendered to Doris Pike. Mrs. Pike subsequently died in the nursing home, and Corry Manor sought to collect an outstanding balance on her account with the nursing home of approximately $8,000.00.

Towards that end, Corry Manor, through their attorneys- the Defendant in this matter, contacted Joni Eades in an attempt to collect this alleged balance. Defendant sent a letter advising Ms. Eades that she was legally liable on the debt pursuant to Pennsylvania law. In a subsequent telephone conversation, the Defendant informed Ms. Eades that they would garnish

her wages and put a lien on Mr. Pike's home if the debt were not paid. At all relevant times herein, both Mr. Pike and Ms. Eades reside in the State of New York.

The Defendant then filed a lawsuit against each of the Plaintiffs in the State of Pennsylvania. After filing the action, they served the lawsuit upon the Plaintiffs by delivering the summons and complaint to each of them in the State of New York. Mr. Pike and Ms. Eades answered that lawsuit alleging, among other things, that the State of Pennsylvania did not have personal jurisdiction over either of them. That lawsuit remains pending, and no action has been taken with respect to that matter since the pleadings were served.

Mr. Pike and Ms. Eades also filed this action against the Defendant for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C.§1692, et seq. Defendant has filed a Motion to Dismiss the Complaint, and to change venue.

## I. PLANTIFFS' ALLEGED OBLIGATION TO PAY THE NURSING HOME IS COVERED BY THE FDCPA

Mr. and Mrs. Pike incurred alleged obligations to Corry Manor for the provision of nursing home services to Mrs. Pike, which are clearly consumer obligations under the FDCPA. *Roth v. NCC Recovery, Inc.,* 2012 WL 29955456 (N.D.Oh., 2012); *Watson v. NCC Recovery,* 2011 WL 3322844 (N.D.Oh., 2011). The obligations were contractual in nature. It is on the basis of these contracts that Corry Manor sought to collect the nursing home bill from the Plaintiffs in this action. Had there been no contract, neither of the Plaintiffs could have been liable to Corry Manor because Mrs. Pike would have not been liable in the first instance.

2

### A. Defendant's Claim to Recover Allegedly Wrongfully Transferred Property Arises From an Obligation Covered by the FDCPA.

The Defendant's lawsuit against Plaintiffs sought to recovery property allegedly fraudulently transferred to Plaintiffs by Mrs. Pike. Plaintiffs dispute these allegations and question what the factual basis upon which these scurrilous allegations were made.

However, even if one takes the allegations at face value, the claims are covered by the FDCPA. The underlying transaction for this claim was Mrs. Pike's incurring a legal obligation to Corry Manor for services rendered. Without this obligation, there could be no claim of a fraudulent transfer-she would be free to transfer her assets as she so chose. Under these circumstances, it has been held that the obligation to return funds to the creditor qualifies as a transaction covered by the FDCPA. *Oppenheim v. I.C. System*, 627 F.3d 833, 837-88 (11th Cir.,2010).

### B. Plaintiffs Obligation to Pay Corry Manor Under Pennsylvania Law Arises From an Obligation Covered by the FDCPA

The Defendant also argues that the Plaintiffs obligation to pay the obligation is in the nature of a support obligation, which has been held to be not a "debt" covered under the FDCPA. However, the support obligation in this instance is substantially different from a typical support obligation.

The cases cited by the Defendant involve support obligations with no underlying contract or transaction. The support obligations were imposed by court order. In contrast, the debt in this case arises out of the Defendant's contracts with Mr. and Mrs. Pike. Neither Mr. Pike, nor Joni Eades would bear any liability to Corry Manor without the underlying contracts. Even if there were no contracts, the debt in this case, unlike a typical support obligation, arises out of the transaction by which Corry Manor provided nursing home services to Mrs. Pike.

3

As a result, it is submitted that the nursing home liability, if any, of Mr. Pike and Joni Eades arose out the alleged obligations of the Pikes' to pay for the nursing home services provided. This meets the definition of a "debt" as provided for in 15 U.S.C.§1692a.

## II.   23 Pa. C.S.A.§4603 IS PREEMPTED BY THE FEDERAL NURSING HOME REFORM ACT

Whenever the federal government has the authority to regulate a given area, Congress may exercise that power so as to preclude states from asserting authority over the same subject matter. *See generally* L. Tribe, *American Constitutional Law* § 6–25 (1988). "[T]he Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824)); *National Fuel Gas Supply Corp. v. Public Service Commission of the State of New York*, 894 F.2d 571, 575–76 (2d Cir.), *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3240, 111 L.Ed.2d 750 (1990). Such preemption may be express or implied.

Express preemption occurs to the extent that a federal statute expressly directs that state law be ousted to some degree from a certain field. *See, e.g., Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977); *Motor Vehicle Manufacturers Association of the United States, Inc. v. Abrams*, 899 F.2d 1315, 1318–19 (2d Cir.1990), *cert. denied*, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). In this case, there is no express preemption.   However, where there is no express statutory statement ousting state law from a given area, there may be implied preemption.

> [A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, ... or when state law is in actual conflict with federal law. We have found implied

4

conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Freightliner Corp. v. Myrick,* 514 U.S. 280, ——, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995) (internal quotation marks omitted); *see, e.g., Campbell v. Hussey,* 368 U.S. 297, 300–02, 82 S.Ct. 327, 328–30, 7 L.Ed.2d 299 (1961) (field preemption); *Michigan Canners & Freezers Association v. Agricultural Marketing & Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2522–23, 81 L.Ed.2d 399 (1984) (conflict preemption); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (obstacle preemption). In *Freightliner Corp. v. Myrick,* , the Supreme Court noted that the inclusion in a federal statute of an express provision regarding preemption does not necessarily foreclose the possibility that aspects of a state law not expressly within the federal preemption provision may be preempted by implication. *See* 514 U.S. at —— – ——, 115 S.Ct. at 1487–88 (discussing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

The Federal Nursing Home Reform Act, 42 U.S.C. §1396r(c)(5)(A)(ii) provides in relevant part:

> (A) Admission
> With respect to admissions practices, a nursing facility must-
>
> \*\*\*
>
> (ii) not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility; ...

The federal prohibition against third party guarantees was designed to prevent nursing homes from "requiring a person, such as a relative, to *accept responsibility for the charges incurred by a resident.*" It prohibits such facilities from requiring a person other than the resident to "*assume personal responsibility* for any cost of the resident's care." *Podolsky v. First*

*Healthcare Corp.*, 50 Cal.App.4th 632, 645 (Cal.App. 2 Dist., 1996); see also Ambrogi, *Legal Issues in Nursing Home Admissions* (Fall 1990) Vol. 18, no. 3 Law Medicine & Health Care 254, 258 [equating the terms "responsible party" and "guarantor" as one who signs or co-signs a nursing home admission agreement and thus "assumes personal financial liability" for the resident's bills]. The obvious purpose and intent of this statute was to allow relatives of the patient in a nursing home to avoid becoming financially liable for the sometimes exorbitant expenses incurred for nursing home care. However, 23 Pa. C.S.A.§ 4603 seeks to do exactly what the Nursing Home Reform Act attempts to prohibit. It imposes liability on the spouse or child of a nursing home resident to pay for that care. This would appear to run contrary to the clear intent of the Federal Nursing Home Reform Act.

With respect to Ms. Eades, it is clear that 23 Pa. C.S.A.§4603 should be preempted. She never agreed to pay for the cost of Mrs. Pike's residency at Corry Manor. With respect to Mr. Pike, the issue is a little more complex.

It has been held that a nursing home may still comply with Nursing Home Reform Act if the guarantor *voluntarily* agrees to pay for the underlying obligation. However, there is no evidence bearing on this issue at this early stage, and it would appear to be an issue of fact that cannot be resolved at this early stage. *Pioneer Ridge Nursing Facility Operations, L.L.C. v. Ermey*, 41 Kan.App.2d 414,419 (Kan.App.,2009). Moreover, the complaint alleges that the guarantee was presented to Mr. Pike as a condition for Mrs. Pike's admission, which would clearly be a violation of the statute.

## III.  THIS COURT HAS JURISDICTION OVER THE DEFENDANT

The amended complaint alleges that the Defendant mailed a letter to Joni Eades on July 25, 2011, and thereafter prompted a telephone conversation with Joni Eades while she was

residing in the State of New York. In addition, Defendant served their meritless complaint upon both Plaintiffs in New York. Both of these acts caused the Plaintiffs to become upset and anxious.

In their telephone call, the Defendants threatened to use the legal remedies provided under New York law to garnish Ms. Eades' wages, and to place a lien on Mr. Pike's New York real property.

With respect to the state lawsuit, it was not the filing of the suit that caused emotional distress, it was the service of the suit upon them in the State of New York. This was effected within the State of New York by agents of the Defendant.

N.Y. Civ. Prac. L. & R. § 302(a) allows the court to exercise personal jurisdiction over a non-resident defendant if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state" *and* the cause of action arises from that jurisdictional act or acts. N.Y. Civ. Prac. L. & R. § 302(a)(1) (McKinney 1990). Proof of a single transaction in New York can satisfy the statutory requirement *Kreutter v. McFadden*, 71 N.Y.2d 460, 467 (1988). Even where the defendant never enters New York, a single transaction can suffice "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Id.* However, New York courts will not sustain jurisdiction based *solely* on a defendant's communication from another state to a party in New York without further examination. *Fiedler v. First City Nat'l Bank of Houston*, 807 F.2d 315, 318 (2d Cir.1986). In order for the court to find that jurisdiction exists based on communications from another state, the court must find that the defendant " 'purposefully' availed himself 'of the privilege of conducting activities within New York and thereby 'invoked the benefits and protections of its laws.' " *Fava v. RRI, Inc.*, 1997 WL 205336 (N.D.N.Y.,1997);

*Parke–Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)(quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

In *Fava,* the Court found sufficient grounds to exercise jurisdiction where the Defendant (1) initiated contact with a New York resident; (2) sent a collection notice into the state; (3) sent two faxes related to its collection efforts into the state; and (4) making at least five phone calls related to its collection effort into the state. Here, the Defendant sent mail into the state, conversed with Ms. Eades while she was in the state, effected service of the lawsuit within the state, and threatened to employ the legal process provided for by New York law to garnish Ms. Eades, and place a lien on Mr. Pike's New York property. In short, as in the *Fava* case, the Defendant transacted business and indicated their intent to conduct further transactions of business in the future within the State of New York by virtue of the multiple collection activities. As such, it is submitted that this Court may exercise jurisdiction over the Defendant.

## IV.   THE WESTERN DISTRICT OF NEW YORK IS THE PROPER VENUE FOR THIS ACTION

The Second Circuit has held that the receipt of a collection notice within a district is a sufficient event in an FDCPA case, and is sufficient to allow venue in the district where the communication is received. *C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.,1992). In this case the receipt of a threatening letter, telephone call, and a collection lawsuit within this district should be deemed sufficient to allow venue to be placed in this district.

## CONCLUSION

By reason of the above, Plaintiffs should be permitted to amend their complaint, and the Motions to Dismiss and to Change Venue should be denied.

Dated: April 19, 2012

                                        /s/ Seth J. Andrews
                                        Seth J. Andrews, Esq.
                                        Law Offices of Kenneth Hiller, PLLC
                                        *Attorneys for the Plaintiff*
                                        6000 North Bailey Ave., Suite 1A
                                        Amherst, NY 14226
                                        (716) 564-3288
                                        Email: sandrews@kennethhiller.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JONI EADES AND LEVERE C. PIKE, JR.,

                    Plaintiffs,

v.                                  Civil Action No. 12-cv-6680

KENNEDY, PC. LAW OFFICES.,

                    Defendant.

---

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1. This is an action for actual and statutory damages brought in response to Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA") which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

3. Venue is proper in this district under 28 U.S.C. §1391(b) in that the Defendant transacts business here and the conduct complained of occurred here.

### III. PARTIES

4. Plaintiff, Joni Eades, is a natural person residing in the County of Monroe and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5. Plaintiff, Levere C. Pike, Jr., is a natural person residing in the County of Chautauqua and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

6. Defendant, Kennedy, P.C. Law Offices, is a corporation organized and existing under the laws of the State of Pennsylvania and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

7. Defendant has transacted business within the State of New York as is more fully set forth hereinafter in this complaint.

1

8. Defendant regularly attempts to collect debts alleged to be due another.

9. The acts of the Defendant alleged hereinafter were performed by its employees acting within the scope of their actual or apparent authority.

10. All references to "Defendant" herein shall mean the Defendant or an employee of the Defendant.

## IV. FACTUAL ALLEGATIONS

11. That Plaintiff Levere C. Pike, Jr.'s wife incurred a debt to HCF of Corry, Inc. d/b/a Corry Manor. This debt will be referred to as "the subject debt."

12. That the subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

13. That upon information and belief Defendant was employed by Corry Manor to collect on the subject debt.

14. That on or about October 2010, Plaintiff Levere C. Pike, Jr.'s wife was admitted to Corry Manor for rehab for a surgical procedure on her hip.

15. In or about December 2010, after Ms. Pike was already admitted to Corry Manor, Plaintiff Levere C. Pike, Jr. was informed by Corry Manor that he had to enter into an admission agreement in order for his wife to remain at the Corry Manor nursing facility.

16. This admission agreement stated that in exchange for nursing care provided to Ms. Pike, Plaintiff Levere C. Pike, Jr. promised to use Ms. Pike's assets to pay for the care provide to her.

17. That the admission agreement was null and void as it violated the federal Nursing Home Reform Act.

18. In or about January 2011, Plaintiff Levere C. Pike, Jr.'s wife passed away during her residence at Corry Manor.

19. At the time of her passing, Corry Manor alleged that there was an outstanding balance of $7,996.76 for Ms. Pike's treatment.

20. That Corry Manor retained the services of the Defendant to attempt to collect the outstanding nursing home charges from Plaintiffs.

2

21. On July 25, 2011, Defendant mailed a letter to Joni Eades informing her that she was liable to pay the nursing home charges. In said letter, Defendant instructs the Plaintiff to contact them by August 11, 2011 in order to resolve the issue without need of litigation. A copy of the letter is attached as **Exhibit A**.

22. Thereafter, Joni Eades spoke to the Defendant by telephone. During that conversation, the Defendant stated to her that if the alleged subject debt was not paid, that they would put a lien on her father's home and garnish her wages. Joni Eades informed them that she was not responsible for her mother's medical bills to which the Defendant replied "services were provided, the bill needs to be paid and you are responsible."

23. On or about December 14, 2011, Defendant, on behalf of Corry Manor, filed a lawsuit against Plaintiffs in the State of Pennsylvania, Erie County Court of Common Pleas alleging that they were responsible for the alleged outstanding balance for Ms. Pike's treatment.

24. That Plaintiff Joni Eades does not reside nor ever never resided in Pennsylvania.

25. That Plaintiff Joni Eades never agreed to be responsible for any medical debt of her mother, Ms. Pike.

26. That Plaintiff Joni Eades never entered into any agreement with Defendant's client, Corry Manor.

27. That Plaintiff Levere C. Pike, Jr., at the time of the lawsuit brought by Defendant on behalf of Corry Manor, did not reside in Pennsylvania.

28. That Plaintiff Levere C. Pike, Jr. never agreed to be responsible for any medical debt of his wife, Ms. Pike.

29. That Plaintiffs never withheld or misappropriated any of his wife's assets in efforts to not pay the alleged balance stated as due and owing by Corry Manor.

30. That pursuant to the admission agreement entered into by Plaintiff Levere C. Pike, Jr. and Corry Manor, any legal dispute shall be resolved through arbitration.

31. That Defendant improperly filed, on behalf of Corry Manor, a lawsuit against Plaintiffs in the State of Pennsylvania, Erie County Court of Common Pleas alleging that they were responsible for the alleged outstanding balance for Ms. Pike's treatment.

32. That the Defendant served the lawsuit upon the Plaintiffs by mailing the summons and complaint to Plaintiffs at their residences in the State of New York.

33. That in the lawsuit, Corry Manor, through their attorneys, the Defendant, falsely alleged that Plaintiffs were the recipients of wrongfully transferred assets from Mrs. Pike.

34. That as a result of Defendants acts Plaintiffs became nervous, upset, anxious, and suffered from emotional distress.

## V. CAUSE OF ACTION

35. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in paragraphs 1 through 34 above.

36. The conduct of Defendant as described in this complaint violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

   A. Defendant violated 15 U.S.C. §1692e4 by stating to Plaintiff Joni Eades that they would garnish her wages if she did not pay the alleged subject debt.

   B. Defendant violated 15 U.S.C. §1692f and. §1692f1 by stating to Plaintiff Joni Eades that she was responsible for her mother's medical bill.

   C. Defendant violated 15 U.S.C. §1692e(4) and §1692f6 by stating that they would place a lien on Plaintiff Levere C. Pike, Jr.'s home if the alleged subject debt was not paid.

   D. Defendant violated 15 U.S.C. §1692e, §1692e2, §1692e5, §1692e10, and 15 U.S.C. §1692f1 by improperly filing on behalf of Corry Manor, a lawsuit against Plaintiffs in the State of Pennsylvania, Erie County Court of Common Pleas alleging that they were responsible for the alleged outstanding balance for Ms. Pike's treatment.

   E. Defendant violated 15 U.S.C.§1692e(5) and 1692e(10) by attempting to collect a debt from Lavere Pike that was null and void as it violated the Nursing Home Reform Act.

   F. Defendant violated 15 U.S.C.§1692e(5) and 1692e(10) by attempting to pursue a lawsuit against Plaintiffs.

   G. Defendant violated 15 U.S.C.§§1692e(2)(A), 1692e(10) and 1692f(1) by falsely alleging in the state lawsuit that Doris Pike's property had been fraudulently transferred to Plaintiffs.

37. That as a result of the Defendant's FDCPA violations as alleged herein, Plaintiffs became nervous, upset, anxious and suffered from emotional distress.

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered against the Defendant for:

(a) Actual damages;

(b) Statutory damages for pursuant to 15 U.S.C. § 1692k.

(c) Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

(d) For such other and further relief as may be just and proper.

## VI. JURY DEMAND

Please take notice that Plaintiffs demand trial by jury in this action.

Dated: April 19, 2012

/s/ Seth J. Andrews
Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: sandrews@kennethhiller.com