UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JONI EADES,
LEVERE C. PIKE, JR.,

                      Plaintiffs,

                                                            DECISION AND ORDER

                                                             12-CV-6680L

           v.

KENNEDY, PC. LAW OFFICES,

                      Defendant.
_____

      This matter was brought by consumers Joni Eades ("Eades") and Levere C. Pike, Jr. ("Pike"), to challenge certain debt collection actions by the defendant. Defendant Kennedy, PC Law Offices ("Kennedy") is a law firm which engages in, among other things, debt collection.

      Kennedy allegedly attempted to collect a debt from Eades and Pike via at least one letter and one telephone call, and through a lawsuit that was filed in Pennsylvania. Plaintiffs' complaint alleges that these actions violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq. Kennedy now moves to dismiss the complaint for failure to state a claim (Dkt. #6), and plaintiffs have cross moved to amend the complaint (Dkt. #11) to amplify the alleged facts and add a cause of action under the Nursing Home Reform Act, 42 U.S.C. §§ 1395i-3 et seq. ("NHRA"). For the reasons set forth below, the plaintiffs' cross motion to amend is granted,[1] and defendant's motion to dismiss is granted.

---

[1] Leave to amend is to be freely granted when justice so requires. *See Freidus v. Barclays Bank PLC*, 2013 U.S. App. LEXIS 17159 (2d Cir. 2013). The Court therefore grants plaintiffs' motion to amend the complaint, and will apply defendant's arguments in support of its motion to dismiss the original complaint to the facts and causes of action alleged in the amended complaint.

DISCUSSION

I.      Whether Jurisdiction is Established and Venue is Proper

Initially, I find that this Court lacks jurisdiction over this action. Although the parties are diverse, the amount-in-controversy prong for supplemental jurisdiction is lacking. As such, the sole claimed basis for jurisdiction is New York's long-arm statute, which provides that: "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent," (1) transacts business with the state or contracts so supply goods or services there; (2) commits a tortious act within the state, except for defamation; (3) commits a tortious act outside of the state to a resident, except for defamation, and regularly does or solicits business within the state, derives substantial revenue from goods used or services rendered in the state, or alternatively, expects or should reasonably expect its acts to have consequences within the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possessed real property within the state. N.Y. C.P.L.R. §302(a). Plaintiffs, who do not allege that Kennedy conducts business or supplies goods or services in New York, that it owns any property here, that it has engaged in an ongoing course of conduct within the state (as opposed to a single letter, service of process for the Pennsylvania lawsuit, and a single phone call), or that it has committed a tort (as opposed to a statutory violation), have failed to allege facts sufficient to establish that Kennedy has sufficient ties to New York for long-arm jurisdiction to apply. As such, plaintiffs have failed to establish that this Court has jurisdiction over their claims.

Even assuming *arguendo* that the Court did have jurisdiction over this matter, I further observe, as discussed below, that plaintiffs have failed to sufficiently state their claims.

II.     Whether Plaintiffs' Obligation to Pay is a "Debt" Under the FDCPA

In or about October 2010, Pike, a resident of New York, placed his wife Doris in the Corry Manor nursing home in Pennsylvania. As part of the admission process, Pike signed a contract promising to use Doris's assets to pay for her care. Doris subsequently died, and Corry Manor

sought to collect approximately $8,000.00 from Pike for services it rendered to Doris. After its demands for payment were ignored, Corry Manor, through Kennedy, attempted to collect the debt from Pike and his daughter, Eades, by means of at least one item of correspondence and at least one telephone call. Finally, Kennedy filed a lawsuit again Pike and Eades in the state of Pennsylvania (the "Pennsylvania lawsuit"). That lawsuit remains pending, and Pike and Eades have appeared in that action.

The FDCPA defines a "debt" as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . ." 15 U.S.C. §1692a(5). Plaintiffs claim that because Pike's debt arose from the admissions contract, it is a "debt" under the FDCPA, and that the FDCPA was violated by Kennedy's efforts to collect on that debt.

Kennedy contends, on the other hand, that the amount owed to Corry Manor is not a contract-based "debt" under the FDCPA, but the result of a financial obligation imposed by statute. Kennedy alleges, as it has in the Pennsylvania lawsuit, that the plaintiffs are statutorily liable for the costs of Doris's care pursuant to 23 Pa. C.S.A. §4603 (hereafter "Pennsylvania indigent statute"), which provides that spouses and children of an indigent person who have the financial ability to "care for and maintain or financially assist" the indigent are responsible to do so. *See* 23 Pa. C.S.A. §4603(a). As such, for example, the Pennsylvania indigent statute "permits a nursing home caring for an indigent person to bring a . . . suit in assumpsit against a child of an indigent resident . . . for reimbursement of sums expended for the support of the indigent parent." *Five Star Quality Care, Inc. v. Yablonski*, 2009 Pa. Dist. & Cnty. Dec. LEXIS 12 at *7 (Pa. 2009).

Although there is no case law on point, the Court notes that statutorily-imposed filial support obligations similar to the Pennsylvania indigent statute, such as child support obligations, have previously been held not to give rise to "debts" to which the FDCPA applies. *Adymy v. Erie County Child Support Enforcement Unit*, 2006 U.S. Dist. LEXIS 25025 at *9-*10 (W.D.N.Y. 2006) ("child support payments are not a 'debt' covered by the FDCPA," but an obligation imposed by statute "to

force [parents] to fulfill their parental duty to support their children"). I find no reason to distinguish a statutorily-imposed duty of filial support on the part of spouses and children toward an indigent spouse or parent, such as that presented here, from the statutorily-imposed duty of filial support on the part of parents toward their children, such as that examined in *Adymy*. *See generally Health Care & Retirement Corp. of Am. v. Pittas*, 46 A.3d 719, 720 (Pa. Super. Ct. 2012) (referring to an action under the Pennsylvania indigent statute as a "filial support action"). There is simply no contrary authority by which the Court could conclude that the duty imposed by 23 Pa. C.S.A. §4603 is not a statutory filial support obligation, but instead creates a "debt . . . arising out of a transaction" for purposes of the FDCPA.

Moreover, even assuming *arguendo* that collections efforts under 23 Pa. C.S.A. §4603 could be considered an attempt to collect a FDCPA-covered "debt," the plaintiffs have failed to allege facts sufficient to demonstrate that the defendant's collection efforts violated the FDCPA. "The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002). It prohibits debt collectors from harassing, oppressing, or abusing any person, engaging in false, deceptive, or misleading communications, and/or employing unfair or unconscionable means to collect a debt. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f.

Here, plaintiffs allege that Kennedy mailed one letter, made one phone call, and brought the Pennsylvania lawsuit against them in an attempt to collect a debt. As discussed above, the alleged legal bases for the Pennsylvania lawsuit – the Pennsylvania indigent statute and likewise the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. §5101 (allowing a creditor to regain property from a third party to satisfy a debtor's obligation, if the property was unlawfully transferred from the debtor to the third party) – are facially valid and not frivolous, and plaintiffs make no credible claim that Kennedy's communications concerning the monies owed, or the claimed statutory bases for Kennedy's claim on behalf of Corry Manor, were false or misleading. Moreover, because Kennedy's attempts to collect the debt consisted of only two communications which clearly set forth

the amount of the alleged debt and the legal basis upon which it was sought, and an apparently non-frivolous lawsuit which remains pending, plaintiffs have not alleged collection attempts so harassing, repetitive, oppressive or abusive as to state a viable claim that Kennedy's collection efforts violated the FDCPA. Thus, even if the debt at issue was a "debt" falling within the ambit of the FDCPA, plaintiffs have failed to state a claim for violation of the FDCPA, and that claim is dismissed.

### III. Whether 23 Pa. C.S.A. §4603 is Preempted by the Nursing Home Reform Act

Plaintiffs also urge that to the extent that the Pennsylvania indigent statute imposes personal liability on relatives of an indigent for the costs of the indigent's nursing home care, it is preempted by that portion of the NHRA which prohibits a nursing home from requiring "a third party guarantee of payment to the facility as a condition of admission." 42 U.S.C. §1395i-3(c)(5)(A)(ii).

Initially, the statutes do not appear to conflict or overlap on their face. The NHRA holds that nursing homes may not require an individual's relatives to assume personal liability for the individual's care *as a condition of admission or continued residence* in the facility. The Pennsylvania indigent statute cannot be said to cover the same territory: it merely holds that where a resident is or becomes indigent, a nursing home may seek payment or reimbursement for the resident's care from their spouse, children or parents. It does not bypass the NHRA by permitting or excusing the assumption of personal liability by a relative for a nursing home resident's care *as a condition of admission or continued residence* – the sole evil that the NHRA at 42 U.S.C. §1395i-3(c)(5)(A)(ii) appears to have been intended to prevent.

Indeed, the plaintiffs have not produced, nor has the Court's own research been able to locate, any authority establishing that the Pennsylvania indigent statute is preempted by the NHRA. Pennsylvania state courts applying the Pennsylvania indigent statute have generally not mentioned, and do not appear to have seriously considered the possibility, that the statute is preempted by federal law. Where Pennsylvania state courts *have* confronted nursing home support claims made under the two-pronged basis of contractual obligations implicating the NHRA, and statutory obligations under

- 5 -

the Pennsylvania indigent statute, they have not observed any overlap between the two, or perceived that any preemption issues attended them.  *See e.g.*, *Five Star Quality Care, Inc.*, 2009 Pa. Dist. & Cty. Dec. LEXIS 12 (Pa. 2009).  I accordingly decline to find that the Pennsylvania indigent statute is preempted by federal law.

### IV.     Plaintiffs' Cause of Action Under the NHRA

To the extent that plaintiffs' amended complaint purports to assert a claim under the NHRA, that claim is insufficiently stated and is dismissed.  Specifically, plaintiffs allege that defendant violated 15 U.S.C. §1692e, which prevents a nursing home from requiring a third party to assume liability for a resident's care as a condition of the resident's admission.

The statute manifestly does not apply to the facts pleaded by the plaintiffs in either the original pleading or the amended one.  As plaintiffs concede, Doris's admissions agreement, which was signed by Pike, and another of his daughters who is not a party to this action, did not require any of the representatives who signed it to assume personal liability for Doris's care as a condition of her admission to, or continued residence at, Corry Manor.  To the contrary, the admissions agreement clearly states that, "[a]ll financial obligations in this Agreement are the Resident's, and except as specifically provided otherwise in the Agreement or as agreed to by the Representative, nothing in this Agreement shall be construed to require that a Representative is in any way personally liable to pay for services rendered by the Manor to the Resident."  (Dkt. #6-1, sub-exh. B to Exh. B, at Section II(A)(1).

Rather than requiring Doris's representatives to assume personal liability for the cost of her care, the admissions agreement simply requires Doris's representatives to use *her assets* to pay for her care.  To the extent that the agreement does impose personal liability on representatives in the event that they divert Doris's assets, it does not run afoul of the NHRA, since it is not requiring representatives to assume personal liability or use their own assets for the cost of the resident's care

in the first instance, but seeks only to permit recoupment of the *resident's assets* if they are wrongfully diverted. *See e.g.*, *Sunshine Care Corp. v. Warrick*, 100 A.D.3d 981, 981-982 (N.Y. App. Div. 2012). The facts alleged by the plaintiffs thus fail to allege a cognizable claim under the NHRA.

## CONCLUSION

For the foregoing reasons, plaintiffs' cross motion to amend the complaint (Dkt. #11) is granted, and defendant's motion to dismiss (Dkt. #6) is granted in its entirety. The court lacks jurisdiction over the matter, and in any event the amended complaint fails to state a claim. The complaint is accordingly dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 3, 2013.